# CV-10 0032

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
JULIET ANILAO, HARRIET AVILA, MARK
DELA CRUZ, CLAUDINE GAMAIO, ELMER
JACINTO, JENNIFER LAMPA, RIZZA MAULION,
JAMES MILLENA, THERESA RAMOS, RANIER
SICHON and FELIX Q. VINLUAN,

                    Plaintiffs,

       -against-

THOMAS J. SPOTA, III, Individually and
as District Attorney of Suffolk County;
OFFICE OF THE DISTRICT ATTORNEY OF
SUFFOLK COUNTY; LEONARD LATO,
Individually and as an ASSISTANT
DISTRICT ATTORNEY OF SUFFOLK COUNTY;
COUNTY OF SUFFOLK; SENTOSA CARE, LLC;
AVALON GARDENS REHABILITATION AND
HEALTH CARE CENTER; PROMPT NURSING
EMPLOYMENT AGENCY, LLC.; FRANCRIS
LUYUN; BENT PHILIPSON; BERISH RUBINSTEN,
SUSAN O'CONNOR and NANCY FITZGERALD,

                    Defendants.
------------------------------------------x

**COMPLAINT AND
JURY DEMAND**

09-CV-

HURLEY, J.

WALL, M.J.

    Plaintiffs, by Kase & Druker and Sandback, Birnbaum &
Michelen, their undersigned counsel, complaining of the
defendants, do hereby allege as follows:

    1.   Plaintiffs Juliet Anilao, Harriet Avila, Mark Dela
Cruz, Claudine Gamaio, Elmer Jacinto, Jennifer Lampa, Rizza
Maulion, James Millena, Theresa Ramos and Ranier Sichon
(hereafter, collectively "the Nurse Plaintiffs") are
citizens of the Philippines and legal residents of the

United States, residing, at all times relevant hereto, in the Eastern District of New York.

2.  Plaintiff Felix Vinluan is an attorney duly admitted to practice in the Courts of the State of New York, residing in the Eastern District of New York.

3.  Upon information and belief, Thomas J. Spota, III is an individual residing in Suffolk County, New York, and is the duly elected District Attorney of Suffolk County.

4.  Upon information and belief, defendant Office of the District Attorney of Suffolk County is a governmental entity and a part of the government of Suffolk County, New York.

5.  Upon information and belief, defendant Leonard Lato is an individual residing in Suffolk County, New York, and is a duly appointed Assistant District Attorney of Suffolk County.

6.  Upon information and belief, defendant County of Suffolk is a New York State Governmental entity.

7.  Upon information and belief, defendant Sentosa Care, LLC. ("Sentosa") is an entity duly organized and existing under the Laws of the State of New York, with its principal place of business in Nassau County, New York.

8.  Upon information and belief, defendant Avalon Gardens Rehabilitation and Health Care Center ("Avalon

Gardens") is an entity duly licensed as a Skilled Nursing Facility under the laws of the State of New York.

9. Upon information and belief, defendant Prompt Nursing Employment Agency, LLC. ("Prompt") is an entity duly organized and existing under the Laws of the State of New York, with its principal place of business in Nassau County, New York.

10. Upon information and belief, defendant Francris Luyun is an individual residing in the State of New York, and is a principal of Prompt.

11. Upon information and belief, defendant Bent Philipson is an individual residing in the State of New York. Upon information and belief, he is a principal of Sentosa, Avalon Gardens and Prompt.

12. Upon information and belief, defendant Berish Rubinstein is an individual residing in the State of New York. He is a principal of Prompt.

13. Upon information and belief, defendant Susan O'Connor is an individual residing in the State of New York. At all times relevant hereto, she was the duly appointed administrator of Avalon Gardens.

14. Upon information and belief, defendant Nancy Fitzgerald is an individual residing in the State of New

York.  At all times relevant hereto, she was the duly appointed Director of Nursing at Avalon Gardens.

15. This Court has jurisdiction of this action under 28 U.S.C. §1331, over claims arising under 42 U.S.C. §1983.

16. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. §1367(e).

17. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §1391(b), because that is the jurisdiction in which the claims arose, and in which all of the defendants conducted business.

18. Plaintiffs have complied with the provisions of New York General Municipal Law §50-i by the service of a Notice of Claim upon the County of Suffolk within the time required by General Municipal Law §50-e.  More than 90 days has elapsed since the filing of that notice.

19. Plaintiffs have submitted to a hearing pursuant to General Municipal Law §50-h at the request of the County of Suffolk.

20. Plaintiffs demand a jury trial of each of the causes of action in this complaint.

**FACTS**

21. The Nurse Plaintiffs were all trained in the Philippines as Nurses and/or Physicians, and were duly licensed in their professions in the Philippines.

4

22. Due to the severe shortage of trained Nurses in the United States, many health care providers recruit nurses in the Philippines to come to the United States and work as nurses.

23. Each Nurse Plaintiff desired to work as a nurse in the United States.

24. Among the entities recruiting nurses in the Philippines is Sentosa Recruitment.

25. Plaintiffs were recruited in the Philippines by Sentosa Recruitment, specifically, by Francris Luyun.

26. Upon information and belief, Luyun and Sentosa Recruitment are beneficially owned by and/or are related to entities owned and/or controlled by Philipson.

27. Upon information and belief, the sole purpose of Sentosa Recruitment Agency, Inc., is to recruit nurses for facilities affiliated with Sentosa Services LLC, an entity which is also owned, in whole or in part, by Bent Philipson.

28. Upon information and belief, the methods of recruitment were approved by Philipson, Luyun, and Rubinstein, and by Sentosa and Prompt.

29. In order to induce each Nurse Plaintiff to sign a contract with Sentosa Recruitment, rather than with the myriad other agencies recruiting nurses in the Philippines,

Sentosa Recruitment, Philipson, and Luyun made certain promises.

30. Among the promises was that the Nurse Plaintiffs would be "direct hire" nurses, rather than "agency" nurses.

31. The Nurse Plaintiffs were also promised eight-hour shifts, night shift differentials, medical and dental benefits, malpractice insurance, two months of housing, and competitive salary.

32. When these promises were made, defendants Philipson, Luyun, Rubinstein, Sentosa and Prompt ("the Sentosa defendants") knew them to be false, in that they had no intention of providing the promised benefits to the nurses who signed contract with Sentosa facilities.

33. Each Nurse Plaintiff signed a contract to work at a specific facility, each of which was affiliated with Sentosa.

34. None of the Nurse Plaintiffs signed a contract with Avalon Gardens.

35. The contracts provided, *inter alia*, that each Nurse Plaintiff was obligated to work for the facility with which he or she contracted for three years.

36. Each contract further provided that, if the nurse signatory did not fulfill that obligation under the contract, a penalty of $25,000 (characterized as

"liquidated damages") was to be paid to the facility with which the nurse contracted.

37. The promises made to the Nurse Plaintiffs were not fulfilled in that, *inter alia*, the Nurse Plaintiffs were employed by Prompt as agency nurses rather than as "direct hires" at the specific facility; the Nurse Plaintiffs did not receive the promised insurance; the Nurse Plaintiffs were not permitted to work eight hour shifts; the Nurse Plaintiffs did not receive the promised insurance benefits, vacation, time off, and pay; the Nurse Plaintiffs were housed in overcrowded and substandard housing, and various other promises were not fulfilled.

38. The Sentosa Defendants made or authorized others to make the promises and representations knowing and intending that the Nurse Plaintiffs rely upon them.

39. The Nurse Plaintiffs relied upon the aforementioned representations in selecting and contracting with the Sentosa defendants, rather than with the myriad of other agencies and facilities recruiting in the Philippines.

40. Upon arriving in the United States, the Nurse Plaintiffs were employed by Prompt and assigned to work at Avalon Gardens.

41. The Nurse Plaintiffs soon began to complain about the treatment that they received at Avalon Gardens.

42. Specifically, they complained that their housing was inadequate, and that the two-bedroom house had 8 people in it, that they did not receive promised time off, that Sentosa failed to pay the correct hourly wage and failed to pay overtime, and of lack of insurance, staffing shortages, and other serious breaches of each of their contracts by Prompt.

43. They also complained that they were not the direct hire of any facility, but were the employees of Prompt, an employment agency.

44. Their complaints failed to bring any redress to their situation.

45. In order to ascertain their rights, the Nurse Plaintiffs contacted the Philippine Consulate in New York, and requested the name of an attorney who would advise them.

46. The Consulate referred them to Felix Vinluan.

47. After speaking to the Nurse Plaintiffs and evaluating their situation, Vinluan advised them that their contract had been breached in multiple ways by the Sentosa Defendants, and that they were, therefore, not bound under that contract to continue their employment.

48. Based upon their understanding that they would not be in breach of their contract, and upon the fact that the

Sentosa Defendants refused to remedy the contract breaches, the Nurse Plaintiffs resigned their employment on April 7, 2006.

49. In addition to the Nurse Plaintiffs, many other nurses who were recruited in the Philippines by Sentosa Recruitment, working in other Nursing Facilities affiliated with Sentosa, employed by Prompt, and with the same complaints about their employment, also resigned their employment at or about the same time as the Nurse Plaintiffs.

50. In order to prevent additional nurses from resigning, defendant Philipson threatened that the Nurse Plaintiffs and the others who resigned would be prosecuted, deported, faced with license revocation and subjected to a civil suit if they did not return to work.

51. He conveyed this threat at a meeting with the nurses who had not quit at his Split Rock Nursing Home in the Bronx. He threatened the nurses at Split Rock that if they quit, they would face the consequences specified in paragraph 50, above. These threats were made to coerce the nurses to remain at Sentosa as all upcoming shifts had been covered and there was no legitimate future concern about patient care.

52.     Sentosa, Avalon Gardens, Prompt, and other
Sentosa-affiliated facilities then began a series of
retaliatory actions against the Plaintiffs, including but
not limited to filing a complaint in Nassau County Supreme
Court alleging, among other things, breach of contract and
tortious interference with contract, seeking to enforce the
$25,000.00 liquidated damages clause with a prayer for
$50,000,000 in punitive damages.

53.  They also sought a preliminary injunction seeking
to enjoin the Nurses Plaintiffs and Vinluan from speaking
with other nurses about resigning.

54. In April 2006, Avalon Gardens, through defendants
O'Connor and Fitzgerald, filed a complaint with the New
York State Education Department.  That agency licensed
nurses and governed their conduct.

55. In June 2006, Justice Stephen Bucaria of the New
York State Supreme Court, County of Nassau, denied the
motion for an injunction on the express ground that the
plaintiffs failed to establish a "likelihood of success on
the merits" on their underlying claims.

56. At that point in time, some of the Nurse Plaintiffs
had full nursing licenses while others still operated under
a limited permit while their license applications were
pending.

57.   In September 2006, the State Education Department sent an e-mail to Plaintiff Vinluan stating that the Nurse Plaintiffs had been fully exonerated of any wrongdoing. The State Education Department found no patient abandonment, no unprofessional conduct and no immoral conduct in the manner of the Nurse Plaintiffs' resignations.

58. In order to set an example of by showing the retaliatory measures that would befall other nurses currently employed by Prompt and working at at various Sentosa nursing home facilities, Sentosa proceeded to further retaliate against the nurses who resigned from Avalon.

59. Approximately three weeks after the resignations by the Nurse Plaintiffs at Avalon Gardens, O'Connor, or a person acting at her behest and on behalf of Avalon Gardens, called the Suffolk Police Department to file a complaint.  Upon information and belief, the Police Department refused to take any action as, in their opinion, no crime had been committed.

60. To punish the nurses for withholding their work, Howard Fensterman, the attorney for Sentosa arranged a

private meeting between himself and Defendants Spota,

Philipson (CEO of Sentosa Care LLC), Luyun, and others.

61. As a result of that meeting, Defendant Spota opened

an investigation and assigned the case to one of his

deputies, defendant Leonard Lato, chief of the Insurance

Crimes Bureau.

62. Lato interviewed Vinluan sometime in early November

2006 – all of the time assuring him that he was not a

target of the investigation.

63. Lato was provided with significant exculpatory

information, including the State Education Department

decision and Justice Bucaria's order denying Sentosa's

application for preliminary injunction in the pending civil

cases, as well as information about the fact that none of

the Nurse Plaintiffs had ceased working during a shift.

Yet Lato, with the consent and at the urging of Spota,

presented the case to a Grand Jury anyway.

64. Defendant Lato, and other investigators from the

Office of the District Attorney of Suffolk County, also

interviewed the Nurse Plaintiffs, again falsely informing

them that they were not the targets of criminal

investigations.

65.  Nearly one year after their resignations, the

Grand Jury returned an indictment pursuant to which the

Nurse Plaintiffs and Vinluan were arrested and charged in the Supreme Court of New York, Suffolk County. Justice Robert W. Doyle was assigned to preside over the case.

66. The indictment charged the Nurse Plaintiffs and Vinluan with Conspiracy in the Sixth Degree, for allegedly conspiring to endanger the welfare of a child and a physically disabled person; Solicitation in the Fifth Degree, for allegedly requesting and attempting to cause the nurses to resign; Endangering the Welfare of a Child; and Endangering the Welfare of a Physically Disabled Person.

67. Upon information and belief, the presentation of evidence to the Grand Jury was improper, in that, inter alia, the Grand Jury was not properly charged as to the law, and the Grand Jury was falsely informed that one or more of the nurses had resigned and left the facility before completing his or her shift.  Further, the Grand Jury was not informed that the Education Department had previously determined that the Nurse Plaintiffs had not violated the very regulations which they were indicted for violating.

68. As a result of the indictment, the Plaintiffs were arrested and detained for processing.

69. The Thirteenth Amendment to the U.S. Constitution provides affirmative rights to individuals to be free from indentured servitude.

70. Through the criminal prosecution, the Suffolk County District Attorney violated the constitutional rights of the Nurse Plaintiffs to be free from forced labor.

71. The First Amendment to the U.S. Constitution provides affirmative rights to individuals to, inter alia, exercise free speech and to freely associate with persons of their choosing.

72. By prosecuting Vinluan for exercising his constitutional rights of free speech and free association the criminal action violated the First Amendment.

73. The Fourteenth Amendment to the United States Constitution prohibits the States, and any entity acting pursuant to State law, from depriving individuals of their rights without due process.

74. The prosecution of the Plaintiffs for protected activities, and the procuring of the indictment by improper procedures, including the presentation of false evidence and improper charges regarding the law, deprived the Plaintiffs of those rights.

75. Plaintiffs moved to dismiss the indictment against them upon the ground, *inter alia*, that the prosecution

violated the First and Thirteenth Amendments to the United States Constitution.

76. That motion was denied by Judge Doyle on Sept. 27, 2008.

77. Thereafter, in March, 2008, the Plaintiffs filed an application for a Writ of Prohibition in the Appellate Division, Second Department of the Supreme Court of the State of New York.

78. On April 14, 2008, the Appellate Division, Second Department stayed all proceedings in the Supreme Court of Suffolk County until the hearing and determination of the petition for a Writ of Prohibition.

79. On January 13, 2009, the Appellate Division, Second Department, issued a writ of prohibition against the further prosecution of the indictment.

80. The Court found that the indictment violated the Nurse Plaintiffs' rights under the Thirteenth and Fourteenth Amendments by seeking to punish them for withholding labor.

81. It further found that "the greatest risk created by the resignation of these nurses was to the financial health of Sentosa."

82. The Court further found that the indictment of Vinluan violated his rights under the First and Fourteenth Amendment to advise his clients of their rights.

83. Finally, the Court found that a Writ of Prohibition should issue because the Plaintiffs herein were "threatened with prosecution for crimes for which they cannot constitutionally be tried, the potential harm to them is 'so great and the ordinary appellate process so inadequate to redress that harm' that prohibition should lie," citing *Matter of Rush v. Mordue,* 68 N.Y.2d at 354.

84. Thereafter, on October 29, 2009, the indictment was dismissed by the Supreme Court of Suffolk County (Doyle, J.).

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENANTS**

85. Plaintiffs repeat and reallege the allegations in paragraphs 1 – 84 hereof with the same force and effect as if more fully set forth herein.

86. Defendant Spota is the chief law enforcement office of the County of Suffolk.

87. Prosecution decisions by Spota constitute the official policy of the County of Suffolk.

88. Upon information and belief, Spota, Lato, the Office of the District Attorney of Suffolk County, and the County of Suffolk (the "Suffolk Defendants") acted in

16

concert with, and at the behest of, the Sentosa Defendants, Avalon Gardens, O'Connor and Fitzgerald to secure the indictment of the Plaintiffs.

89. The reason for the indictment was to assist the Sentosa Defendants in their quest to punish the Plaintiffs for their part in resigning, and to discourage other nurses employed by Prompt and working at Sentosa facilities from resigning, no matter how intolerable the conditions.

90. The defendants, and each of them, knew or should have known that the Nurse Plaintiffs could not legally be prosecuted for resigning their employment.

91. The defendants, and each of them, knew or should have known that Vinluan could not legally be prosecuted for giving legal advice to his clients, the Nurse Plaintiffs.

92. The defendants, and each of them, knew or should have known, or recklessly failed to know that the indictment was procured in violation of the Plaintiffs' right to due process under the Fourteenth Amendment, in that the Grand Jury was not properly charged on the law, was given false evidence, and was not presented with exculpatory evidence.

93. All of the actions taken by the defendants, and each of them, were under color of State Law.

94. The indictment, as found by the Appellate Division, Second Department, was violative of the Plaintiffs' rights under the First, Thirteenth, and Fourteenth Amendments.

95. The indictment prevented the Plaintiffs from being able to obtain work in their chosen fields.

96. The indictment caused the Plaintiffs to incur attorneys' fees.

97. The indictment caused the Plaintiffs mental anguish and physical pain.

98. The Plaintiffs were arrested and detained as a result of the indictment.

99. As a direct and proximate result of the misconduct of the Defendants, and each of them, in securing an improper indictment, the plaintiffs sustained damages in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

100. Plaintiffs repeat and reallege the allegations in paragraphs 1 – 99 hereof with the same force and effect as if more fully set forth herein.

101. Defendant Spota, on behalf of the County of Suffolk and the Office of the District Attorney, was obligated to supervise the employees of the Office of the District Attorney to assure that they did not violate the rights of the residents of Suffolk County.

18

102. Upon information and belief, Spota failed to properly supervise the staff of his office in that this indictment was procured through improper means and in violation of the constitutional rights of the Plaintiffs.

103. Upon information and belief, after the filing of the indictment, Spota knew or had reason to know about the improprieties in the investigation and grand jury presentation, and about the fact that the indictment violated the Plaintiffs' constitutional rights, but did not take any steps to terminate the prosecution.

104. Upon information and belief, this prosecution was continued at the behest of the Sentosa defendants.

105. All of the actions taken by the defendants, and each of them, were under color of State Law.

106. The indictment, as found by the Appellate Division, Second Department, was violative of the Plaintiffs' rights under the First, Thirteenth, and Fourteenth Amendment.

107. The indictment prevented the Plaintiffs from obtaining work in their chosen fields.

108. The indictment caused the Plaintiffs to incur attorneys' fees.

109. The indictment caused the Plaintiffs mental anguish and physical pain.

19

110. As a direct and proximate result of the misconduct of the Defendants, and each of them, in securing an improper indictment, the plaintiffs sustained damages in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**

111. Plaintiffs repeat and reallege the allegations in paragraphs 1 – 110 hereof with the same force and effect as if more fully set forth herein.

112. The Suffolk Defendants agreed among themselves, within the scope of their employment and under color of law, and with the Sentosa Defendants, Avalon Gardens, Fitzgerald and O'Connor, to deprive the Plaintiffs of their constitutional rights under the First, Thirteenth and Fourteenth Amendments.

113. The overt acts in furtherance of this conspiracy include the events described above, beginning with the meeting among Spota and the Sentosa Defendants, and including the indictment and prosecution of the Plaintiffs.

114. These acts continued until the dismissal of the indictment by the Supreme Court of Suffolk County on October 29, 2009.

115. As a direct and proximate result of this conspiracy, Plaintiffs were wrongfully indicted and

prosecuted, and suffered damages as set forth above, in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**

116. Plaintiffs repeat and reallege the allegations in paragraphs 1 – 115 hereof with the same force and effect as if more fully set forth herein.

117. Each of the defendants, lacking probable cause, nonetheless intentionally and recklessly, and with malice, caused the Plaintiffs to be indicted and prosecuted for Conspiracy in the Sixth Degree, for allegedly conspiring to endanger the welfare of a child and a physically disabled person; Solicitation in the Fifth Degree, for allegedly requesting and attempting to cause the nurses to resign; Endangering the Welfare of a Child; and Endangering the Welfare of a Physically Disabled Person.

118. The Sentosa Defendants, together with O'Connor, Fitzgerald, and Avalon Gardens were the complainants in the indictment against the Plaintiffs.

119. The indictment violated the Plaintiffs' constitutional rights under the First, Thirteenth and Fourteenth Amendments to the Constitution, as set forth above.

120. The Plaintiffs were innocent of the charges against them.

121. The prosecution terminated in the Plaintiffs' favor.

122. As a direct and proximate result of the acts of the defendants, and each of them, the Plaintiffs were prosecuted and suffered the damages set forth above, in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**

123. Plaintiffs repeat and reallege the allegations in paragraphs 1 - 122 hereof with the same force and effect as if more fully set forth herein.

124. As a result of the indictment, the Plaintiffs were compelled to surrender or risk arrest, and were detained by the Suffolk County Police for processing.

125. The Plaintiffs were conscious of the confinement, and did not consent to it.

126. The Plaintiffs suffered damages, including personal humiliation, from the false arrest and detention, in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE SENTOSA SENTOSA DEFENDANTS, AVALON GARDENS, FITZGERALD AND O'CONNOR**

127. Plaintiffs repeat and reallege the allegations in paragraphs 1 - 126 hereof with the same force and effect as if more fully set forth herein.

128. The Sentosa Defendants, and each of them, conspired among themselves, and with Avalon Gardens, O'Connor and Fitzgerald, to deprive the Plaintiffs of their civil rights.

129. The Sentosa Defendants wanted to punish the Nurse Plaintiffs, and others, for their resignation from the employ of Prompt.

130. The Sentosa Defendants wanted to deter other nurses from resigning from their employment by Prompt.

131. The Sentosa Defendants wanted to punish Vinluan for advising the Nurse Plaintiffs, and other Nurses employed by Prompt, regarding their legal rights with respect to their employment by Prompt.

132. The Sentosa Defendants wanted to deter other attorneys from advising the other nurses regarding their legal rights with respect to their employment by Prompt.

133. In order to obtain these goals, the Sentosa Defendants, together with Avalon Gardens, O'Connor and Fitzgerald, took steps to procure the false indictment against the Plaintiffs.

134. The Sentosa Defendants, together with their politically powerful counsel, met with defendant Spota personally, along with members of his office in order to persuade him to indict the Plaintiffs.

135. Upon information and belief, during the course of that meeting, the Sentosa Defendants gave information to Spota and others at the meeting which was false, and which they knew, believed, or had reason to believe was false.

136. Specifically, upon information and belief, the Sentosa Defendants falsely informed Spota that the Nurse Plaintiffs, or some of them, had resigned and left in the middle of a shift when, in truth and in fact, as the Sentosa Defendants well knew, the Nurse Plaintiff who was on shift at the time of the resignations completed her shift and worked several additional hours.

137. Upon information and belief, the Sentosa Defendants falsely informed Spota that they were unable to cover all nursing shifts at Avalon Gardens when, in truth and in fact, the Avalon Gardens, O'Connor and Fitzgerald arranged for the same level of coverage for all of the shifts as had been customary when the Nurse Plaintiffs were working at Avalon.

138. Upon information and belief, the Sentosa Defendants falsely informed Spota that Vinluan procured the Nurse Plaintiffs' resignation because he was recruiting them for another employment agency when, in truth and in fact, Vinluan only informed the Nurse Plaintiffs of their rights, and they determined to resign on their own.

139. In addition, Vinluan acted only as an attorney advising a client, and not for the benefit of any employment agency or other entity.

140. Upon information and belief, the Sentosa Defendants, together with Avalon Gardens, O'Connor and Fitzgerald, knew that this information was false when they conveyed it to Spota.

141. Upon information and belief, the said defendants conveyed this information with malice, in order to cause the false indictment and arrest of the Plaintiffs.

142. The said defendants did cause the indictment and arrest of the Plaintiffs.

143. The Plaintiffs were innocent of the charges against them.

144. The prosecution terminated in favor of the Plaintiffs by the dismissal of the indictment.

145. As a result of the actions of the Sentosa Defendants, Avalon Gardens, Fitzgerald and O'Connor, the Plaintiffs sustained the damages as set forth above, in an amount to be determined at trial.

146. The actions of the Sentosa Defendants were directed not only at the Plaintiffs, but generally at all nurses in the employ of Prompt, and all attorneys whom those nurses would approach for advice.

147. Therefore, the Plaintiffs are entitled to punitive damages.

WHEREFORE, the plaintiffs demand judgment:

A.   Under the First Cause of Action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

B.   Under the Second Cause of action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

C.   Under the Third Cause of Action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

D.   Under the Fourth Cause of Action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

E.   Under the Fifth Cause of action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

F.   Under the Sixth Cause of Action, against the defendants Sentosa Care, LLC, Avalon Gardens Rehabilitation and Health care Center, Prompt Nursing Employment Agency, LLC, Francris Luyun, Bent Philipson, Berish Rubinstein, Susan O'Connor and Nancy Fitzgerald, jointly and severally,

awarding compensatory damages to them, in an amount to be determined at trial

      G.   That the Court award Punitive Damages to them, against all individual defendants, and against Sentosa, Prompt, and Avalon Gardens, in an amount to be determined at trial;

      H.   For a trial by jury;

      I.   Under the First, Second, Third and Fourth Causes of action, for Attorney's fees, pursuant to 42 U.S.C. §1988;

      J.   For pre-judgment and post-judgment interest, and recovery of the costs of this action;

      K.   For such other and further relief as the Court may deem just and proper.

Dated:  Garden City, New York
       January 5, 2010

               Yours, etc.

               _____
               JAMES O. DRUKER, ESQ.
               KASE & DRUKER, ESQS.
               Attorneys for Plaintiffs
               ELMER JACINTO, JULIET ANILAO
               HARRIET AVILA, MARK DELA CRUZ, CLAUDINE
               GAMIAO, JENNIFER LAMPA, RIZZA MAULION,
               JAMES MILLENA, MA THERESA RAMOS and
               RANIER SICHON
               1325 Franklin Avenue
               Garden City, New York 11530
               (516) 746-4300

OSCAR MICHELEN, ESQ.
SANDBACK, BIRNBACK & MICHELEN, ESQS.
Attorneys for Plaintiff FELIX VINLUAN
200 Old Country Road
Mineola, New York
(516) 248-8000