UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------x
JULIET ANILAO, HARRIET AVILA, MARK
DELA CRUZ, CLAUDINE GAMAIO, ELMER
JACINTO, JENNIFER LAMPA, RIZZA MAULION,
JAMES MILLENA, THERESA RAMOS, RANIER
SICHON and FELIX Q. VINLUAN,

                          Plaintiffs

          -against-

THOMAS J. SPOTA, III, Individually and
as District Attorney of Suffolk County;      10-CV-0032-JFB-WDW
OFFICE OF THE DISTRICT ATTORNEY OF
SUFFOLK COUNTY; LEONARD LATO,
Individually and as an ASSISTANT
DISTRICT ATTORNEY OF SUFFOLK COUNTY;
COUNTY OF SUFFOLK; SENTOSA CARE, LLC;
AVALON GARDENS REHABILITATION AND
HEALTH CARE CENTER; PROMPT NURSING
EMPLOYMENT AGENCY, LLC.; FRANCRIS
LUYUN; BENT PHILIPSON; BERISH RUBINSTEN,
SUSAN O'CONNOR and NANCY FITZGERALD,

                          Defendants.
-------------------------------------------x

## MEMORANDUM IN OPPOSITION

OSCAR MICHELEN, ESQ.              JAMES O. DRUKER, ESQ.
SANDBACK & MICHELEN, ESQ.        KASE & DRUKER, ESQS.
Attorneys for Plaintiff          Attorneys for Plaintiffs
FELIX VINLUAN                    ELMER JACINTO, JULIET ANILAO
200 Old Country Road             HARRIET AVILA, MARK DELA CRUZ,
Mineola, New York 11501          CLAUDINE GAMAIO, JENNIFER LAMPA,
(516) 248-8000                   RIZZA MAULION, JAMES MILLENA,
                                 MA THERESA RAMOS and RANIER SICHON
                                 1325 Franklin Avenue
                                 Garden City, New York 11530
                                 (516) 746-4300


Paula Schwartz Frome,
    of Counsel

## TABLE OF CONTENTS

Table of Cases.................................................................. i

Preliminary Statement........................................................ 1

FACTS.......................................................................... 3

STANDARD OF REVIEW........................................................... 12

POINT I

    DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY AS
    THIS PROSECUTION WAS UNCONSTITUTIONAL FROM THE
    OUTSET AND AS THE DEFENDANTS LACKED JURISDICTION
    TO BRING IT........................................................... 12

POINT II

    THE DEFENDANTS WOULD ONLY BE ENTITLED TO
    QUALIFIED IMMUNITY FOR ANY ACTS THAT
    PRECEDED THE GRAND JURY INDICTMENT.................................. 17

POINT III

    THE SUFFOLK DEFENDANTS' RELIANCE ON THE
    INDICTMENT IS MISPLACED AS THE COMPLAINT
    ALLEGES FRAUD AND MISCONDUCT IN
    THE PROCUREMENT OF THE INDICTMENT................................. 21

POINT IV

    THE COMPLAINT SETS FORTH SUFFICIENT FACTS
    TO SUPPORT A CLAIM AGAINST THE SUFFOLK DEFENDANT.................. 21

POINT V

    THE COMPLAINT ADEQUATELY PLEADS
    CAUSES OF ACTION AGANST THE
    SENTOSA DEFENDANTS................................................. 25

    I.   Standards for Deciding a Motion under
        Rule 12(b)(6)................................................. 25

    II.  The Sentosa Defendants are State Actors for
        §1983 Purposes.............................................. 26

III.    The Complaint Adequately Alleges
        a Conspiracy.......................................................................... 30

IV.     The Complaint Adequately Alleges Malicious
        Prosecution...........................................................................35

        A.  The Sentosa Defendants Initiated
        the Proceeding.................................................................. 35

        B.  The Prosecution Terminated in Plaintiffs'
        Favor.....................................................................................36

        C.  There was no Probable Cause for
        the Proceeding...................................................................38

V.      The Complaint Adequately Alleges False Arrest................. 38

VI.     Leave to Amend.........................................................................39

CONCLUSION.........................................................................................40

## TABLE OF AUTHORITIES

### Cases

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970) .............. 28

*Almonte v. City of Long Beach,* 478 F.3d 100  (2d Cir.2007) .... 18

*Ashcroft v. Iqubal,* 129 S.Ct. 1937 (2009) ..................... 26

*Autry v. Northwest Premiums Servs., Inc.,* 144 F.3d 1037 (7th Cir. 1998)................................................. 12

*Bang v. Utopia Restaurant,* 923 F.Supp. 46 (S.D.N.Y. 1996) ..... 28

*Barbera v. Smith,* 836 F.2d 96, (2d Cir.1987) .............. 17, 19

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)................................................. 24

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) .......... 16, 17, 20

*Cantalino v. Danner,* 96 N.Y.2d 391 (2001) ..................... 37

*City of Canton, Ohio v. Harris,* 489 U.S. 378,  109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)..................................... 23

*City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985)................................. 22

*Coakley v. Jaffe,* 49 F.Supp.2d 615 (S.D.N.Y. 1999) .... 28, 36, 38

*Coggins v. County of Nassau,* 2008 W.L. 2522502 (E.D.N.Y.) *aff'd* 2010 W.L. 308990 (2d Cir.)........................... 20, 26, 34

*Conley v. Gibson,* 355 U.S. 41 (1957) .......................... 12

*Conte v. County of Nassau,* 2008 W.L 905870 (E.D.N.Y.) 24, 26, 29, 33

*Day v. Morgenthau,* 909 F.2d 75 (2d Cir.1990) .............. 17, 20

*Fiacco v. City of Rensselaer, New York,* 783 F.2d 319 (2d Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987)......................................... 23

*Fisk v. Letterman,* 401 F. Supp.2d 362 (S.D.N.Y. 2005) ..... 31, 32

*Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988) ................................................. 16

*Friedman v. NYC Administration for Children's Services,* 2005 WL 2436219 (E.D.N.Y.) ...................................... 28, 29

*Gentile v. County of Suffolk,* 926 F.2d 142 (2d Cir.1991) ...... 24

*Green v. Montgomery,* 219 F.3d 52 (2d Cir.2000) ................. 21

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ................................................. 18

*Heck v. Humphrey,* 512 U.S. 477 (1994) ......................... 37

*Hill v. City of New York,* 45 F.3d 653 (2d Cir. 1995) .......... 17

*Holeman v. City of New London,* 425 F.3d 184 (2d Cir. 2005) .... 18

*Hughes v. McWilliams,* 2009 W.L. 4823940 (S.D.N.Y.) ............ 38

*Imbler v. Pachtman,* 424 U.S. 409 (1978) .......... 13, 14, 16, 17

*Kugut v. County of Nassau,* 2009 W.L. 5033937 (E.D.N.Y.) ....... 37

*Lawson v. New York Billiards Club,* 331 F.Supp.2d 121 (E.D.N.Y. 2004) ....................................................... 37

*Maloney v. County of Nassau,* 623 F.Supp.2d 277 (E.D.N.Y. 2007) 30

*Maskantz v. Hayes,* 39 A.D.3d 211 (3d Dept. 2007) ......... 29, 35

*Matter of Nicholson v. State Comm. on Jud. Conduct,* 50 N.Y.2d 597, (1980) ................................................. 15

*Matter of Vinluan v. Doyle,* 60 A.D.3d 247 (2d Dept. 2009) . passim

*Mesiti v. Wegman,* 307 A.D.2d 339 (2d Dept. 2003) ......... 29, 35

*Minasan v. Lubow,* 49 A.D.2d 1033 (3d Dept. 2008) .............. 37

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).. 22

*Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)..........................................................12

*Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)..................................................19

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1297-300, 89 L.Ed.2d 452 (1986).............................22

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ......16

*Saucier v. Katz*, 533 U.S. 194 (2001) ..........................18

*Shmueli v. City of New York*, 424 F.3d 231 (2d Cir. 2005) ......14

*Smith v. Edwards,* 175 F.3d 99 (2d Cir. 1999) ..................38

*Smith-Hunter v. Harvey,* 95 N.Y.2d 191 (2000) .................37

*United States v. Price,* 383 U.S. 787 (1966) ..................28

*Villante v. Department of Corrections of the City of New York*, 786 F.2d 516 (2d Cir.1986).................................22

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) ...23, 24

*Weintraub v. Board of Education of City of New York,* 423 F.Supp.2d 38 (E.D.N.Y. 2006), *vacated in part on other grounds* 489 F.Supp.2d 209 (E.D.N.Y. 2007)...........................28

*White v. Frank,* 855 F.2d 956 (2d Cir. 1998) ..................34

*Ying Jing Gan v. City of New York*, 996 F.2d at 536 ...........24

**Statutes**

42 U.S.C. §1983 ..........................................passim

United States Constitution, First Amendment ........9, 10, 13, 32

United States Constitution, Fourteenth Amendment ..........10, 32

United States Constitution, Thirteenth Amendment .......9, 12, 32

## Rules

Federal Rules of Civil Procedure, Rule 12(b)(6) ...........12, 25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
JULIET ANILAO, HARRIET AVILA, MARK
DELA CRUZ, CLAUDINE GAMAIO, ELMER
JACINTO, JENNIFER LAMPA, RIZZA MAULION,
JAMES MILLENA, THERESA RAMOS, RANIER
SICHON and FELIX Q. VINLUAN,

                    Plaintiffs

        -against-

THOMAS J. SPOTA, III, Individually and
as District Attorney of Suffolk County;      10-CV-0032-JFB-WDW
OFFICE OF THE DISTRICT ATTORNEY OF
SUFFOLK COUNTY; LEONARD LATO,
Individually and as an ASSISTANT
DISTRICT ATTORNEY OF SUFFOLK COUNTY;
COUNTY OF SUFFOLK; SENTOSA CARE, LLC;
AVALON GARDENS REHABILITATION AND
HEALTH CARE CENTER; PROMPT NURSING
EMPLOYMENT AGENCY, LLC.; FRANCRIS
LUYUN; BENT PHILIPSON; BERISH RUBINSTEN,
SUSAN O'CONNOR and NANCY FITZGERALD,

                    Defendants.
------------------------------------------x

## MEMORANDUM IN OPPOSITION

### Preliminary Statement

Plaintiffs submit this memorandum in opposition to defendants' motions, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for insufficiency. In this action pursuant to 42 U.S.C. §1983, with pendent state claims, defendants Thomas J. Spota, III ("Spota"), Office of the District Attorney of Suffolk County ("District

Attorney's Office"), Leonard Lato ("Lato") and County of Suffolk ("Suffolk") (hereinafter, collectively, "the Suffolk Defendants") move to dismiss upon the ground that they have absolute immunity for all of the acts committed by them. Defendants Sentosa Care, LLC ("Sentosa"), Avalon Gardens Rehabilitation and Health Care Center ("Avalon"), Prompt Nursing Employment Agency, LLC ("Prompt"), Francris Luyun ("Luyun"), Bent Philipson ("Philipson"), Berish Rubenstein ("Rubenstein"), Susan O'Connor ("O'Connor") and Nancy Fitzgerald ("Fitzgerald") (hereinafter, collectively, "the Sentosa Defendants") move to dismiss upon the grounds that they are not "state actors," and further claim that the complaint fails properly to plead all of the elements of the State law torts. For the reasons set forth hereinafter, the complaint is more than sufficient, and the motion to dismiss should be denied in all respects.

## FACTS

The factual recitation herein is based upon the allegations of the Complaint, and the holding of the Appellate Division, Second Department in *Matter of Vinluan v. Doyle,* 60 A.D.3d 247 (2d Dept. 2009), referenced in the complaint.

Plaintiffs herein, except for Felix Vinluan, are 10 nurses who came to New York from the Philippines to work for the Sentosa defendants. Plaintiff Vinluan was their attorney. The Nurse Plaintiffs signed contracts with specific Sentosa-affiliated facilities, with the understanding that they would work at, and be employees of, those facilities (Complaint ¶30). Each Nurse Plaintiff signed contract with a facility affiliated with Sentosa. None signed a contract with Avalon (Complaint ¶¶33-34). The contracts contained certain promises relating to wages, hours, and working conditions (Complaint ¶31). The contracts also compelled each Nurse Plaintiff to work for the facility with which they contracted for three years, or to pay a $25,000 penalty (Complaint ¶36).

When the Nurse Plaintiffs arrived in the United States they found, to their surprise, that they were working at Avalon and employed by Prompt, an agency. Further, as they worked at Avalon, they noted that the Sentosa defendants breached other significant aspects of their contract. (Complaint, ¶37). Because of this, the Nurse Plaintiffs were extremely

3

dissatisfied with their employment and sought to learn about their rights in obtaining redress of their complaints. They contacted the Philippine Consulate to obtain the name of an attorney whom they could consult. The Consulate referred them to Felix Vinluan. (Complaint, ¶45-46).

After speaking to the Nurse Plaintiffs, and to other nurses working at other Sentosa facilities, Vinluan advised them that Sentosa's breaches rendered their contracts unenforceable, and that they were, therefore, free to resign their employment (Complaint, ¶48). Based upon this advice, the Nurse Plaintiffs, and others, resigned their employment on April 7, 2006 (Complaint ¶¶48-49). The sole Nurse Plaintiff who was on shift at the time of the resignation completed her shift. The others, none of whom was on shift, gave between 8 and 72 hours notice prior to their next shift. *Matter of Vinluan, supra* at 241.

As a course of conduct, the Sentosa defendants had been disregarding their obligations under the contracts with their Philippine nurses. They had been counting upon the fact that the nurses did not know their rights, and were frightened by the penalty clause. The Sentosa Defendants believed that those factors would keep the nurses from resigning over these breaches. The resignations of the Nurse Plaintiffs and others constituted a threat to Sentosa's ability to compel the Philippine nurses to remain employed, no matter how unpleasant

4

or improper the working conditions. Therefore, the Sentosa Defendants sought to punish the Nurse Plaintiffs and others who resigned, to set an "example" to the other Philippine nurses of the consequences of resigning their employment. In pursuance of this aim, defendant Philipson, a principal of Sentosa, told a group of foreign nurses, at a meeting at Split Rock Nursing Home in the Bronx, that the Nurse Plaintiffs and the others who resigned would be prosecuted, faced with license revocation, sued for the $25,000 penalty, and deported if they did not return to their employment. He further stated that any other nurses who resigned would be faced with the same consequences (Complaint, ¶¶50-51).

The Sentosa Defendants thereafter sought to make good on their threats. They commenced a civil action against all of the nurses who had resigned, including the Nurse Plaintiffs, and their attorney, Vinluan. The Sentosa Defendants, however, were unable to obtain a preliminary injunction preventing the Nurse Plaintiffs and Vinluan from speaking to other nurses about resigning (Complaint, ¶52-53, 55).

In April, 2006, Avalon Gardens, through O'Connor and/or Fitzgerald, contacted the New York State Education Department in an attempt to have the Nurse Plaintiffs' nursing licenses or limited permits revoked (Complaint ¶54, 56). The Department of Education investigated the circumstances of the resignations

5

and, in September, 2006, exonerated the Nurse Plaintiffs of any wrongdoing (¶57).

Approximately three weeks after the resignations, O'Connor or another person acting on behalf of Avalon telephoned the Suffolk County Police Department to file a criminal complaint against the Nurse Plaintiffs and Vinluan. The Police Department informed them that no crime had been committed, and refused to take any action (Complaint, ¶59).

Frustrated in their quest to punish the Nurse Plaintiffs and Vinluan, Sentosa's attorney, Howard Fensterman, Esq. arranged a private meeting with the District Attorney of Suffolk County.[1] At the meeting, attended by, at least, Spota, Philipson, Luyun and Fensterman, Spota agreed to investigate and prosecute the Nurse Plaintiffs and Vinluan.[2] (Complaint ¶¶60-61). The prosecution was initiated at the behest of the Sentosa Defendants, and the reason for the prosecution was to punish the Plaintiffs, and to discourage other nurses from resigning (Complaint ¶¶88-89). The Suffolk Defendants each knew, or should have known, that prosecuting the Nurse Plaintiffs for resigning their employment, and Vinluan for representing his clients and giving unremarkable advice, was a violation of their

---

[1] Avalon Gardens was the only Sentosa facility in Suffolk County. The remainder of the nurses who resigned on that date resigned from facilities in Nassau County or New York City.

[2] The parties have admitted that this meeting took place.

6

constitutional rights.   In spite of this knowledge, the Suffolk Defendants agreed with the Sentosa Defendants at that meeting to prosecute the Plaintiffs (¶112).

As his first overt act in pursuance of this conspiracy, Spota assigned Lato, chief of the Insurance Crimes Bureau, to investigate the case and to prosecute the Plaintiffs. (Complaint ¶61).   Lato himself conducted the investigation, including interviewing the Nurse Plaintiffs and Vinluan.   During the interviews, he falsely informed the Plaintiffs that they were not the targets of criminal investigations (Complaint ¶¶62, 64).   During the course of the interviews, Lato was provided with significant exculpatory information, including the State Education Department decision determining that the Nurse Plaintiffs had not committed professional misconduct, the Order of the Supreme Court of Nassau County denying the Sentosa Defendants' request for an injunction, the fact that none of the Nurse Plaintiffs left their employment during a shift, the fact that no shift went uncovered, the fact that under State law, it is the obligation of the facility and not its workers to insure that there is sufficient coverage for patients at all times, and the fact that no harm came to the patients. (Complaint ¶64). However, pursuant to the agreement, the Plaintiffs were prosecuted despite the obvious unconstitutionality lack of merit in the prosecution (Complaint ¶63).

Lato presented the case to the Grand Jury. In order to assure an indictment, he withheld the aforementioned exculpatory information, knowingly presented false testimony, and charged the grand jury improperly regarding the law (Complaint ¶67). In addition, various Sentosa Defendants testified falsely before the grand jury.

One year after the resignations, the Plaintiffs were indicted for conspiracy in the sixth degree, endangering the welfare of a child, endangering the welfare of a physically disabled person, and solicitation in the fifth degree (Complaint ¶66). The Conspiracy count theorized that the object of the conspiracy was to break the Nurse Plaintiffs' contract without incurring the $25,000 penalty, and to obtain alternative employment for the Nurse Plaintiffs. The indictment charged that the Plaintiffs pursued their goals without regard to the Avalon Gardens Patients' welfare, and that their resignations would "render it difficult" for Avalon Gardens to find replacements. Among the overt acts in the conspiracy were the Nurse Plaintiffs' resignations, and the filing of a Federal discrimination claim by Vinluan on behalf of his Nurse clients. *Matter of Vinluan, supra* at 242.

The second count of the indictment charged Vinluan alone with criminal solicitation in the fifth degree. It asserted that, with the intent that the Nurse Plaintiffs engage in

8

conduct constituting endangering the welfare of Avalon patients, he procured their resignations from Avalon. The remaining counts charged that all of the Plaintiffs had acted in concert to endanger the welfare of a child and a disabled person. *Id.* at 242-243.

The Plaintiffs were arrested and detained for processing (Complaint ¶68).

The Plaintiffs moved to dismiss the indictment upon the ground, *inter alia,* that their prosecution violated the First and Thirteenth Amendments of the United States Constitution. The Suffolk Defendants vigorously opposed that motion, which was denied by the trial judge.

In March, 2008, the Plaintiffs filed an application for a Writ of Prohibition to prevent their further prosecution on the indictment. Plaintiffs again claimed, *inter alia,* of violations of their constitutional rights (Complaint ¶77). On April 14, 2008, the Appellate Division stayed all proceedings on the indictment (Complaint, ¶78). On January 13, 2009, the Appellate Division, Second Department issued a Writ of Prohibition against the further prosecution of the Plaintiffs under the indictment for the offenses set forth therein (Complaint ¶80).

Regarding the Nurse Plaintiffs, the Court found that the indictment violated their 13th Amendment rights because it placed them "in the position of being required to remain in Sentosa's

9

service after submitting their resignations, even if only for a relatively brief period of notice, or being subject to criminal sanction." *Matter of Vinluan v. Doyle, supra* at 248. Moreover, the Court noted that none of the Nurse Plaintiffs walked out of Avalon Gardens during a shift, all shifts were, indeed, covered, and no patients were deprived of nursing care. The Justices noted specifically that the only harm from the Nurse Plaintiffs' conduct was "to the financial health of Sentosa." *Id.* at 249-250.

The Court also dismissed the indictment as to Vinluan, finding that it violated Vinluan's constitutionally-protected rights of freedom of speech and association in violation of the First and Fourteenth Amendments. The Court found Vinluan's advice to his clients to be objectively reasonable. The Court said that it would "eviscerate the right to give and receive legal counsel with respect to potential criminal liability if an attorney could be charged with conspiracy and solicitation whenever a District Attorney disagreed with that advice." *Id.* at 251. It found the indictment of Mr. Vinluan to be "profoundly disturbing," and inimical to the fundamental rights of citizens to seek and receive legal advice.

Having determined that the indictment violated the Plaintiffs' constitutional rights, the Court then considered the remedy. It stated that, because the Plaintiffs were being

10

prosecuted for crimes for which they could not constitutionally be tried, the potential harm to them was so great that the appellate process would be inadequate to address the harm. *Id.* Therefore, the Appellate Division issued the extraordinary writ of prohibition.

On October 29, 2009, the indictment was dismissed.

## STANDARD OF REVIEW

In deciding a motion to dismiss brought pursuant to FRCP 12(b)(6), a court must review the complaint's factual allegations and draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Autry v. Northwest Premiums Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). The review of a FRCP 12(b)(6) motion to dismiss is limited to the four corners of the complaint. *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995). A Rule 12(b)(6) motion may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The liberal notice pleading standard of federal practice applies equally to civil rights claims brought pursuant to section 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coord. Unit*, 507 U.S. 163, 164- 169 (1993).

## POINT I

### DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY AS THIS PROSECUTION WAS UNCONSTITUTIONAL FROM THE OUTSET AND AS THE DEFENDANTS LACKED JURISDICTION TO BRING IT

In this case of first impression, the Appellate Division, Second Department, of the Supreme Court of the State of New York has determined that the prosecution of the Plaintiffs in this action violated their constitutional rights under the Thirteenth

and First Amendments. The court found that the prosecution impermissibly attempted to make criminal two constitutionally-protected activities: (1) quitting your job and (2) giving and receiving legal advice. Thus, the very charges brought in the prosecution itself were violations of the Plaintiffs' constitutional rights. It was for this reason that the Second Department took the extraordinary step to grant a writ of prohibition stopping the prosecution from proceeding. The Suffolk Defendants never sought leave to appeal that decision to the Court of Appeals, and this decision is binding upon them. This court should not now provide absolute immunity to the defendants for a prosecution that was unconstitutional *ab initio*.

All of the cases relied upon by the Suffolk Defendants arise from prosecutions that contained proper and constitutional charges; the issues involved related to whether the defendants' constitutional rights were violated before or during the course of an otherwise constitutional process.

For example, *Imbler v. Pachtman*, 424 U.S. 409 (1978), the seminal case in this area, merely involved a claim that the prosecutor had knowingly used false testimony during the course of the criminal trial. There was no allegation of unconstitutionality in the bringing of the charges themselves.

In fact, it was the prosecutor himself in *Imbler* who uncovered the new evidence that lead to the vacatur of the conviction.

In *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) the claim was only that the prosecution was brought by the defendant prosecutors with knowledge of its falsity. The Second Circuit made clear, however, that absolute immunity would not apply to prosecutions brought without authority or in the absence of jurisdiction. In language that is directly applicable to this case, the Second Circuit stated:

> The scope of a prosecutor's jurisdiction is determined by law. In considering whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority, see, e.g., id. ("at least a semblance of jurisdiction"), we inquire whether the pertinent statutes may have authorized prosecution for the charged conduct.

*Shmueli*, 424 F.3d at 237.

The Second Department, however, has already undergone this analysis and ruled in favor of Plaintiffs and against Defendants. In *Matter of Vinluan,* 60 A.D.3d 237, (2d Dept 2009), the court specifically and unequivocally found that the statutes under which the Nurse Plaintiffs were charged in the indictment did not permit the prosecution of the Nurse Plaintiffs as to do so violated the Thirteenth Amendment's prohibition against slavery, indentured servitude and forced labor. *Vinluan*, 60 A.D.3d at 248 (finding that allowing the prosecution to go

14

forward would be "the antithesis of the free and voluntary system of labor envisioned by the framers of the Thirteenth Amendment"). The court further held that the statutes under which Vinluan, the Attorney Plaintiff, was charged under the indictment did not permit the prosecution of the Attorney Plaintiff as to do so violated his and his clients' rights under the First Amendment to freedom of speech and association. *Id.* at 251 (finding that allowing the prosecution to go forward would be "an assault on the adversarial system of justice upon which our society, governed by the rule of law rather than individuals, depends").

But perhaps the most important declaration of the Second Department was the recognition that because of the foregoing constitutional violations, the prosecutions themselves were outside the jurisdiction of the prosecution:

> If the prosecution impermissibly infringes upon these constitutional rights, the act of prosecuting the petitioners would be an excess in power, rather than a mere error of law, and prohibition would be an available remedy.

*Id.* at 245. It is this language which frankly seals the fate of the Suffolk Defendants and mandates denial of their motion. The primary function of a writ of prohibition is to prevent "an arrogation of power in violation of a person's rights, particularly constitutional rights." *Matter of Nicholson v. State Comm. on Jud. Conduct*, 50 N.Y.2d 597, 606 (1980). The

15

*Vinluan* court's ruling that the prosecution was an arrogation of the prosecution's power differentiates this case from all the other cases relied upon by the Suffolk Defendants.

The United States Supreme Court has already recognized that absolute immunity "leave[s] the genuinely wronged ... without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427, 96 S.Ct. at 993. The Second Circuit, in a case involving this same District Attorney's Office, stated the application of this doctrine is "more than disquieting" in cases where there is inappropriate conduct on behalf of the government. *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995). The Supreme Court has held that even when one can identify a common-law tradition of absolute immunity for a given function, the court must consider "whether §1983's history or purposes nonetheless counsel against recognizing the same immunity in §1983 actions." *Buckley v. Fitzsimmons*, 509 U.S.259, 269 (1993). The *Buckley* court added, "Not surprisingly, we have been "quite sparing" in recognizing absolute immunity for state actors in [§1983] context." *Id., citing Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).

This court should also be "quite sparing" and not allow the oppressive cloak of immunity to be extended to prosecutors

investigating    and    commencing    prosecutions    that    are unconstitutional from the very outset.

## POINT II

### THE DEFENDANTS WOULD ONLY BE ENTITLED TO QUALIFIED IMMUNITY FOR ANY ACTS THAT PRECEDED THE GRAND JURY INDICTMENT

When a district attorney functions outside his role as an advocate for the People, the shield of immunity is absent; immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995); *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir.1987) (distinguishing between the investigator's role in acquiring evidence and the advocate's in organizing and evaluating that evidence), cert. denied, 489 U.S. 1065 (1989).

The allegations of the complaint against the Suffolk Defendants specifically allege conduct in the investigation and interrogation of the Plaintiffs prior to submission of the case to a Grand Jury. When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity. *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir.1990) (quoting *Imbler*, 424 U.S. at 410).

The doctrine of qualified immunity shields government agents from liability for their official actions, but not if

17

their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Almonte v. City of Long Beach*, 478 F.3d 100, 110 (2d Cir.2007). An official is entitled to qualified immunity where: (1) the plaintiff has not alleged a violation of a constitutional right; (2) the right was not clearly established at the time of the conduct; or (3) the official's actions were not objectively unreasonable in light of clearly established law. *Id.*

In *Saucier v. Katz*, 533 U.S. 194 (2001) the Supreme Court held that qualified immunity requires a two-step inquiry, first, "whether the facts, taken in the light most favorable to the party asserting an injury, show a violation of a constitutional right" and, second, "whether the constitutional right was 'clearly established' such that '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005), quoting *Saucier v. Katz*, *supra* at 201-06 (alterations in original). However, the Supreme Court recently held that "the *Saucier* procedure should not be regarded as an inflexible requirement" and that while the order of the two-step inquiry set forth in *Saucier* is often appropriate, it "should no longer be regarded

18

as mandatory." *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 812, 818, 172 L.Ed.2d 565 (2009). Regardless of which of the steps the court takes first, the Suffolk Defendants would not be entitled to qualified immunity.

Here, the complaint clearly sets forth violations of constitutional rights and those violations have already been determined by the State appellate court. Furthermore, the rights violated are so basic and fundamental that it can hardly be argued that the contours of the rights were not clear at the time of the offensive conduct.

When a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent because immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings. *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir.1987) (distinguishing between the investigator's role in acquiring evidence and the advocate's role in organizing and evaluating that evidence), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

The Second Circuit has determined that before any formal legal proceeding has begun and before there is probable cause to arrest, a prosecutor receives only qualified immunity for his acts. See *Barbera*, 836 F.2d at 100. As the Supreme Court has stated, "A prosecutor neither is, nor should consider himself to

19

be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). For example, prosecutors are not entitled to absolute immunity for assisting in a search and seizure or arrest. *Day v. Morgenthau*, 909 F.2d 75, 77-78 (2d Cir.1990).

For the movant to allege that the pre-indictment conduct produced no harm flies in the face of the facts and the applicable law. First, the arrest itself is, of course, a harm. Here, the prosecutor's office and the individually named prosecutor conducted the arrest. Second, the *Buckley* court took great pains to distinguish that the "location" of the injury may be relevant to determine if a complaint states a cause of action for damages but not to determine if a complaint should be dismissed on immunity grounds. *Buckley v. Fitzsimmons*, 509 U.S. at 271-272 (whether the conduct complained of caused the injury is "irrelevant . . . to the question whether the conduct of a prosecutor is protected").

Finally, the complaint alleges that the Suffolk Defendants and the Sentosa Defendants agreed to submit false testimony to the grand jury. This conduct is also not covered by immunity. *Coggins v. County of Nassau*, 2008 W.L. 2522502 (E.D.N.Y.) *aff'd* 2010 W.L. 308990 (2d Cir.).

Therefore, the complaint adequately makes out claims for which the Suffolk Defendants are not entitled to qualified immunity and the motion must be denied.

## POINT III

### THE SUFFOLK DEFENDANTS' RELIANCE ON THE INDICTMENT IS MISPLACED AS THE COMPLAINT ALLEGES FRAUD AND MISCONDUCT IN THE PROCUREMENT OF THE INDICTMENT

In seeking to dismiss the complaint, the Suffolk Defendants rely on case law that holds that probable cause is established by the issuance of a Grand Jury indictment. While that premise may generally be true, a plaintiff overcomes the presumption "by a showing that the indictment was procured by 'fraud, perjury, the suppression of evidence or other . . . conduct undertaken in bad faith.'" *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000).

Here the complaint clearly alleges the use of fraud, the suppression of exculpatory evidence and other misconduct which defeats the presumptive value of an indictment.

## POINT IV

### THE COMPLAINT SETS FORTH SUFFICIENT FACTS TO SUPPORT A CLAIM AGAINST THE SUFFOLK DEFENDANT

The movant alleges that only paragraph 87 of the complaint sets forth any allegations against the Suffolk Defendants and that its allegation that "prosecution decisions by Spota

constitute the official policy of the County of Suffolk" (actually contained in paragraph 88 of the complaint) is insufficient. The complaint however also alleges at paragraphs 102 and 103 that Spota failed to properly supervise his staff; that supervision would also include proper training and instruction.

Movant is correct that a municipality and its supervisory officials (such as District Attorney Spota) may not be held liable in a §1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).

In order to establish the liability of a supervisory official like District Attorney Spota, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-83, 106 S.Ct. 1292, 1297-300, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985).

A plaintiff asserting liability against a supervisor under §1983 need not show however that the municipality had an explicitly stated rule or regulation. See *Villante v. Department of Corrections of the City of New York*, 786 F.2d 516, 519 (2d Cir.1986). Rather, the inference that such a policy existed may

22

be drawn from plaintiff's proffer of circumstantial evidence, such as evidence that the municipality (1) so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within the jurisdiction, see, e.g., *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-92, 109 S.Ct. 1197, 1204-06, 103 L.Ed.2d 412 (1989), or (2) had notice of but repeatedly failed to make any meaningful investigation into (i.e., were deliberately indifferent to) charges of misconduct by lower level employees ( e.g., charges that police officers used excessive force), see, e.g., *Fiacco v. City of Rensselaer, New York*, 783 F.2d 319, 327-28 (2d Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

The Second Circuit has set out "three requirements that must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). Plaintiff must show that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents that employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the

23

deprivation of a citizen's constitutional rights." *Id* at 297-98. All three criteria are met here.

First, Defendant Spota had to know that senior assistant districts attorney would confront the issue of exculpatory evidence and the protection of the constitutional rights of the potential accused. Second, proper training and supervision would make that choice less difficult. Third, it is obvious that the wrong choice would injure the constitutional rights of the accused.

In *Walker*, the Court found that plaintiff had stated a cause of action against the District Attorney's office for failure to properly train A.D.As on fulfilling their obligation to disclose exculpatory materials to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Second Circuit has held that the training of assistant district attorneys is regarded as an administrative duty and, therefore, § 1983 lawsuits raising such claims are not barred by absolute immunity or by the Eleventh Amendment. See, e.g., *Ying Jing Gan v. City of New York*, 996 F.2d at 536; *Walker v. City of New York*, 974 F.2d at 301; *Gentile v. County of Suffolk*, 926 F.2d 142, 152 & n. 5 (2d Cir.1991).

In any event, supervisory liability is also imposed when the supervisor participates directly in the decision complained of. *Conte v. County of Nassau,* 2008 W.L 905870 (E.D.N.Y.).

24

Here, the complaint alleges that the prosecution was authorized by Spota, personally. It should be presumed, at the pleading stage, that Spota knew the law regarding Thirteenth and First Amendment rights, and knowingly authorized an unconstitutional prosecution. Thus, both he and the County are liable.

Therefore the motion must be denied as the complaint sets forth sufficient allegations in this regard as well.

## POINT V

### THE COMPLAINT ADEQUATELY PLEADS CAUSES OF ACTION AGANST THE SENTOSA DEFENDANTS

The Sentosa Defendants move to dismiss the complaint, against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure upon the following grounds: that they are not "state actors" for the purposes of a cause of action under 42 U.S.C. §1983; that conspiracy is inadequately pled; and that there are other deficiencies in the pleadings that warrant a dismissal. Contrary to their contentions, the complaint is more than adequate to state a cause of action against them.

### I.  Standards for Deciding a Motion under Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true, and draw all interferences in favor of the pleader. There is no heightened pleading requirement for causes of action under §1983, and the plaintiff need only plead sufficient facts for the Court to

conclude that the claim is plausible. *Ashcroft v. Iqubal,* 129 S.Ct. 1937, 1949-1950 (2009); *Conte v. County of Nassau*, 2008 W.L. 905879 (E.D.N.Y.). The Court considers only the pleadings, and any documents which are attached to the pleadings or are matters of public record. *Coggins v. County of Nassau,* 2008 W.L. 2522501 (E.D.N.Y.) *aff'd* 2010 W.L 308990 (2d Cir.). In this case, the facts, as set forth in the pleadings and in the decision in *Matter of Vinluan v. Doyle, supra,* more than adequately plead a cause of action.

## II. The Sentosa Defendants are State Actors for §1983 Purposes

The Sentosa defendants correctly note that liability under §1983 is predicated upon state action. However, they incorrectly assert that, for purposes of this action, they are not "state actors." The allegations in the complaint are sufficient to classify the Sentosa defendants as state actors.

The complaint alleges that the Sentosa defendants employed nurses from the Philippines, including the Nurse Plaintiffs, all of whom were employed pursuant to written contracts. The Sentosa defendants violated the contracts in multiple respects, while asserting that the nurses remained bound. When the Nurse Plaintiffs and others consulted counsel (Vinluan), they learned that the Sentosa defendants' multiple breaches of their contact freed them from their obligations under the contract.

26

Therefore, the Nurse Plaintiffs, and other nurses employed by Sentosa facilities, resigned.

The resignation of the Nurse Plaintiffs posed a major threat to Sentosa's continued course of conduct regarding their Philippines nurses. Therefore, it was essential to them that the Nurse Plaintiffs be punished. Sentosa's principal, defendant Philipson, appeared at a meeting at one of the Sentosa facilities in which he threatened the remaining nurses with dire consequences, including deportation, criminal prosecution and civil liability if they resigned their employment. The Sentosa Defendants then went on to "make an example" of the Nurse Plaintiffs. Unfortunately for them, their first attempts, to revoke the Nurses' licenses or permits, or to have them arrested by the police, failed. The Police informed the Avalon employees that there was no crime committed, and the Department of Health completely exonerated the Nurses of misconduct. In addition, Sentosa's application for an injunction in the civil action was denied.

Therefore, the Sentosa Defendants took the unusual step of securing a meeting with Thomas Spota, the District Attorney of Suffolk County. They persuaded Spota to investigate and ultimately indict the plaintiffs, whose conduct did not violate any laws. Spota and his staff, including defendant Lato, ignored the existence of substantial exculpatory evidence,

provided to the District Attorney's office by the plaintiffs. This conduct is more than sufficient to support the Sentosa Defendants' liability.

A private party can qualify as a state actor for purposes of §1983 liability if he willfully participates in joint activity with the state actors. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *United States v. Price,* 383 U.S. 787 (1966); *Friedman v. NYC Administration for Children's Services,* 2005 WL 2436219 (E.D.N.Y.); *Weintraub v. Board of Education of City of New York,* 423 F.Supp.2d 38 (E.D.N.Y. 2006), *vacated in part on other grounds* 489 F.Supp.2d 209 (E.D.N.Y. 2007); *Coakley v. Jaffe,* 49 F.Supp.2d 615 (S.D.N.Y. 1999); *Bang v. Utopia Restaurant,* 923 F.Supp. 46 (S.D.N.Y. 1996). Cases involving facts similar to those pled herein have resulted in complaints being sustained against private parties.

*Adickes v. S.H. Kress & Co., supra,* involved a white teacher, in company with African American students, who was denied service at a lunch counter, and was subsequently arrested for "vagrancy." The plaintiff alleged that the arresting police officer was inside the store and witnessed the denial of service prior to the arrest. This was sufficient to sustain the cause of action.

In *Weintraub v. Board of Education of City of New York, supra* at 55-56, plaintiff alleged that the individual defendants

(teacher and administrator) had instigated his arrest by calling the police and falsely reporting that he had committed a crime. The Court held that these allegations were sufficient to survive a motion for summary judgment regarding the defendants' §1983 liability.   In *Friedman v. NYC Administration for Children's Services, supra,* the defendant, a private physician, was liable under §1983 for maliciously providing false information alleging that the plaintiff had abused his child.

The cause of action under §1983 confers no substantive rights.   Rather, the cause of action is substantively the same as a state law cause of action for malicious prosecution. *Conte v. County of Nassau, supra.*   In instances similar to this one, private parties have been held liable for malicious prosecution. In *Mesiti v. Wegman,* 307 A.D.2d 339 (2d Dept. 2003), the court stated that, if a person plays an active role in an arrest, such as giving advice and encouragement or importuning the police to act, or by showing active, officious and undue zeal for an arrest, an individual is liable for malicious prosecution.   In *Maskantz v. Hayes,* 39 A.D.3d 211 (3d Dept. 2007), the court held a private citizen liable for malicious prosecution where the complainant not only called the police, but also had his private attorney accompany him to the police station and persuade the police to arrest the plaintiff.

29

Under the cases cited above, the complaint, at the very least, survives a motion to dismiss upon the ground that the Sentosa defendants are state actors.

### III. The Complaint Adequately Alleges a Conspiracy

It must first be noted that there are no heightened requirements for pleading a conspiracy in a §1983 case. The plaintiff only need allege the time, place, purpose and effect of the agreement. *Maloney v. County of Nassau,* 623 F.Supp.2d 277 (E.D.N.Y. 2007). Here, the plaintiffs pled the event at which the agreement between the Suffolk Defendants and the Sentosa Defendants took place, the agreement itself, and some of the parties present at the meeting in which the agreement was made (See Complaint ¶¶ 60, 61, 112-113). The complaint alleges that the meeting was between Spota, Fensterman, Philipson, Luyun, and others, whose identity is not currently known. At this meeting, the Suffolk Defendants and the Sentosa Defendants agreed that the Suffolk Defendants would initiate a prosecution of the Plaintiffs, despite the fact that their actions in resigning their employment, or advising that they could resign their employment, were not criminal. The Suffolk Defendants thus became part of the Sentosa Defendants campaign to punish the Plaintiffs for resigning their employment, and to prevent other nurses from resigning their employment. They agreed to

violate the Plaintiffs' constitutional rights in order to benefit the Sentosa defendants.

The Sentosa Defendants allege that the complaint does not adequately allege the participation of Rubinstein, O'Connor, Fitzgerald, Sentosa Care, Prompt, and Avalon. At this point, prior to discovery, the Plaintiffs cannot state with specificity all of the actions that were taken by all of the Sentosa Defendants. However, the complaint adequately pleads actions by each of them that contributed to the conspiracy. It alleges that O'Connor, or someone at her direction, on behalf of Avalon, complained to the police in an effort to have the Plaintiffs arrested (Complaint, ¶59); that Prompt (through Rubinstein, its principal) and the other Sentosa facilities, including Avalon, filed a civil action against Plaintiffs (Complaint ¶52); that O'Connor and Fitzgerald, on behalf of Avalon, filed a complaint with the New York State Education Department against the Nurses (Complaint ¶54); and that the purpose of the conspiracy was to benefit the bottom line of Sentosa (Complaint, ¶81). These allegations are incorporated by reference into the conspiracy cause of action (Complaint ¶¶111, 113). They are clearly sufficient to sustain the complaint against each Sentosa Defendant.

The Sentosa defendants rely upon *Fisk v. Letterman,* 401 F. Supp.2d 362 (S.D.N.Y. 2005) for the proposition that merely

31

calling the police does not subject a private party to liability under §1983.  The complaint in *Fisk* alleged only that there were "dialogues" "communications" and "interactions" between the defendants and the police.  The complaint herein alleges much more active participation by the Sentosa Defendants in the decision to prosecute.  As the complaint alleges, the Sentosa Defendants called the police, with no result.  When the police declined to act, they the procured the intervention of the District Attorney himself, and the District Attorney ultimately agreed to seek an indictment despite the fact that the indictment violated the First, Thirteenth and Fourteenth Amendment rights of the Plaintiffs.  Moreover, the complaint alleges that, in furtherance of the conspiracy, the prosecution was continued although the Suffolk Defendants were presented with exculpatory evidence.

Another indication that the indictment was pursuant to a conspiracy was that the District Attorney took the extraordinary step of indicting an attorney for giving legal advice to his clients.  Indeed, among the overt acts in the conspiracy alleged in Count 1 of the indictment was that Vinluan filed a civil rights complaint against the Sentosa Defendants.  It is frightening to think that the filing of charges, which the Plaintiffs were absolutely privileged to do, became the basis of

an indictment against their attorney. It should be noted that Vinluan was a particular target of Philipson.

This case is similar to *Conte v. County of Nassau*, 2008 W.L. 905879 (E.D.N.Y.) in which this court sustained a complaint. Among the allegations showing that a conspiracy existed was the allegation that the defendants were all aware that the charges were false, and that exculpatory evidence existed. Nevertheless, the defendants therein continued to participate in the investigation and prosecution. The complaint herein makes similar allegations. The Sentosa Defendants well knew that none of the Nurse Plaintiffs had walked off a shift, that all shifts were covered, and that the Department of Education had cleared the Nurse Plaintiffs of misconduct. The Suffolk Defendants learned of these same facts. The continuation of the prosecution in the face of that information is another indication that the conspiracy existed.

In fact, the decision of the Appellate Division, Second Department prohibiting the prosecution of the indictment shows the plausibility of the conspiracy allegations in this action. The court noted specifically that the only harm from the Nurse Plaintiffs' conduct was "to the financial health of Sentosa." *Matter of Vinluan v. Doyle, supra* at 249-250. As this Court well knows, it is not the usual policy of District Attorneys to indict innocent citizens, in violation of their constitutional

33

rights, in order to assist the financial well-being of a private organization.

The Sentosa Defendants also complain that the allegations regarding the falsity of grand jury testimony are not attributed to any particular person, and are pled upon information and belief. At this point, the grand jury minutes are sealed, and the Plaintiffs can only plead on information and belief.

It should be noted that the Sentosa Defendants are not immune for having given false grand jury testimony. The Sentosa defendants testified as complainants, not as mere witnesses. False testimony by a complainant is not entitled to immunity. *White v. Frank,* 855 F.2d 956 (2d Cir. 1998). Moreover, an extra-judicial agreement between a witness and prosecutor to give false testimony is also not covered by immunity. *Coggins v. County of Nassau*, 2008 W.L. 2522502 (E.D.N.Y.) *aff'd* 2010 W.L. 308990 (2d Cir.). Here, the Plaintiffs allege that false testimony was given to the grand jury with the knowledge and agreement of the Suffolk and Sentosa defendants.

Again, the allegations in the indictment make it clear that the actual complainants were the Sentosa Defendants. The Conspiracy count theorized that the object of the conspiracy was to break the Nurse Plaintiffs' contract without incurring the $25,000 penalty, and to obtain alternative employment for the Nurse Plaintiffs. The indictment charged that the Plaintiffs

34

pursued their goals without regard to the Avalon Gardens Patients' welfare, and that their resignation would "render it difficult" for Avalon Gardens to find replacements. Among the overt acts in the conspiracy were the Nurse Plaintiffs' resignations, and the filing of a Federal discrimination claim by Plaintiff Vinluan. *Matter of Vinluan v. Doyle, supra* at 242. The victims of the alleged conspiracy were the Sentosa defendants, who procured the indictment and were the complainants thereunder.

In short, the conspiracy allegations are more than sufficient to sustain the complaint.

## IV.   The Complaint Adequately Alleges Malicious Prosecution

The Sentosa defendants (unlike the Suffolk Defendants) next attack the foundations of the malicious prosecution causes of action, both under State law and under §1983. The complaint is undoubtedly sufficient.

### A.  The Sentosa Defendants Initiated the Proceeding

For the reasons set forth in Section II hereof, *supra*, the Sentosa Defendants' advice, encouragement, and importuning of the District Attorney himself, together with their active, officious and undue zeal for the prosecution, is sufficient to find that they initiated the prosecution for malicious prosecution purposes. *Maskantz v. Hayes, supra; Mesiti v. Wegman, supra.*

35

Nor will the intervention of the grand jury in this case vitiate the charge of malicious prosecution. The presumption of the existence of probable cause based upon an indictment can be overcome by alleging that the indictment was procured by fraud, perjury, suppression of evidence or other bad faith conduct. *Coakley v. Jaffe,* 49 F.Supp.2d 615, 623-624 (S.D.N.Y. 1999). The Plaintiffs have amply pled the fact that the grand jury proceeding was based upon false information, the withholding of exculpatory information, and improper charges on the law. Therefore, the Court should not presume the existence of probable cause based upon the indictment.

## B.  The Prosecution Terminated in Plaintiffs' Favor

Absurdly, the Sentosa Defendants assert that the termination of the prosecution based upon a writ of prohibition because the prosecution violated the Plaintiffs' constitutional rights was not a termination in their favor for malicious prosecution purposes. Not surprisingly, the law does not support this assertion.

In their decision, the justices of the Appellate Division found that the Plaintiffs could not be prosecuted because their conduct was constitutionally protected. There was no view of the evidence under which they could be found to be guilty of any crime. This clearly constitutes a favorable termination for New York and Federal law purposes.

36

Under New York law, as a general rule, any termination such that the proceeding cannot be brought again qualifies as a favorable termination. *Kugut v. County of Nassau,* 2009 W.L. 5033937 (E.D.N.Y.); *Smith-Hunter v. Harvey,* 95 N.Y.2d 191 (2000). The only exceptions are where charges are dismissed on the basis of misconduct of the accused, withdrawn pursuant to a compromise, or dismissed out of mercy. *Smith-Hunter v. Harvey, supra.* Thus, a dismissal in the interests of justice upon the grounds that the only wrong committed was civil and not criminal was a favorable termination. *Minasan v. Lubow,* 49 A.D.2d 1033 (3d Dept. 2008). Similarly, a dismissal of a prosecution upon the ground that it could not be proven beyond a reasonable doubt [*Lawson v. New York Billiards Club,* 331 F.Supp.2d 121 (E.D.N.Y. 2004)] or upon the ground that the charges were "groundless" [*Cantalino v. Danner,* 96 N.Y.2d 391 (2001)] were terminations in the defendant's favor. This termination was also in the Plaintiffs' favor.

It is also clear that the termination is favorable for purposes of §1983 liability. In *Heck v. Humphrey,* 512 U.S. 477, 486-487 (1994), the Supreme Court stated, in the context of conviction:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on

37

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C §2254.

Here, there was no conviction, but a state appellate court held the indictment to be invalid. This is a termination in the Plaintiffs' favor.

### C. **There was no Probable Cause for the Proceeding**

As set forth above, the existence of an indictment does not establish probable cause, because the Plaintiffs have alleged that the indictment was improperly procured. *Coakley v. Jaffe, supra.*

## V. The Complaint Adequately Alleges False Arrest

The Sentosa Defendants finally allege that they are not liable for false arrest because they did not procure the arrest, and because it was valid. As is set forth above, the Sentosa Defendants' conduct certainly procured the arrest of the Plaintiffs. Moreover, the Sentosa Defendants cannot rely upon a warrant of arrest to justify this arrest. There was no warrant of arrest for the Plaintiffs; they were detained pursuant to the indictment, and the indictment was improperly procured by misconduct. This vitiates any privilege based upon the existence of the indictment, or an arrest warrant. *Smith v. Edwards,* 175 F.3d 99, 105 (2d Cir. 1999); *Hughes v. McWilliams,* 2009 W.L. 4823940, *9 (S.D.N.Y.).

## VI.    Leave to Amend

In the Court determines that the allegations in the complaint are insufficient, Plaintiffs request leave to amend the complaint.

## CONCLUSION

The motions to dismiss should be denied in their entirety.

Respectfully submitted,

JAMES O. DRUKER, ESQ.
KASE & DRUKER, ESQS.
Attorneys for Plaintiffs
ELMER JACINTO, JULIET ANILAO
HARRIET AVILA, MARK DELA CRUZ, CLAUDINE
GAMIAO, JENNIFER LAMPA, RIZZA MAULION, JAMES
MILLENA, MA THERESA RAMOS and RANIER SICHON
1325 Franklin Avenue
Garden City, New York 11530
(516) 746-4300

OSCAR MICHELEN, ESQ.
SANDBACK, BIRNBACK & MICHELEN, ESQS.
Attorneys for Plaintiff FELIX VINLUAN
200 Old Country Road
Mineola, New York
(516) 248-8000

Paula Schwartz Frome,
    of Counsel