UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
JULIET ANILAO, HARRIET AVILA, MARK
DELA CRUZ, CLAUDINE GAMAIO, ELMER
JACINTO, JENNIFER LAMPA, RIZZA MAULION,
JAMES MILLENA, THERESA RAMOS, RANIER          **AMENDED**
SICHON and FELIX Q. VINLUAN,                  **COMPLAINT AND**
                                              **JURY DEMAND**
                    Plaintiffs,

          -against-

THOMAS J. SPOTA, III, Individually and
as District Attorney of Suffolk County;       10-CV-00032-
OFFICE OF THE DISTRICT ATTORNEY OF            JFB-WDW
SUFFOLK COUNTY; LEONARD LATO,
Individually and as an ASSISTANT
DISTRICT ATTORNEY OF SUFFOLK COUNTY;
COUNTY OF SUFFOLK; SENTOSA CARE, LLC;
AVALON GARDENS REHABILITATION AND
HEALTH CARE CENTER; PROMPT NURSING
EMPLOYMENT AGENCY, LLC.; FRANCRIS
LUYUN; BENT PHILIPSON; BERISH RUBINSTEN,
SUSAN O'CONNOR and NANCY FITZGERALD,

                    Defendants.
------------------------------------------x

     Plaintiffs, by Kase & Druker and Sandback, Birnbaum &

Michelen, their undersigned counsel, complaining of the

defendants, do hereby allege as follows:

     1.  Plaintiffs Juliet Anilao, Harriet Avila, Mark Dela

Cruz, Claudine Gamaio, Elmer Jacinto, Jennifer Lampa, Rizza

Maulion, James Millena, Theresa Ramos and Ranier Sichon

(hereafter, collectively "the Nurse Plaintiffs") are

citizens of the Philippines and legal residents of the

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------x
JULIET ANILAO, HARRIET AVILA, MARK
DELA CRUZ, CLAUDINE GAMAIO, ELMER
JACINTO, JENNIFER LAMPA, RIZZA MAULION,
JAMES MILLENA, THERESA RAMOS, RANIER
SICHON and FELIX Q. VINLUAN,                      **COMPLAINT AND**
                                                  **JURY DEMAND**

                          Plaintiffs,

          -against-

THOMAS J. SPOTA, III, Individually and
as District Attorney of Suffolk County;          10-CV-00032-
OFFICE OF THE DISTRICT ATTORNEY OF               JFB-WDW
SUFFOLK COUNTY; LEONARD LATO,
Individually and as an ASSISTANT
DISTRICT ATTORNEY OF SUFFOLK COUNTY;
COUNTY OF SUFFOLK; SENTOSA CARE, LLC;
AVALON GARDENS REHABILITATION AND
HEALTH CARE CENTER; PROMPT NURSING
EMPLOYMENT AGENCY, LLC.; FRANCRIS
LUYUN; BENT PHILIPSON; BERISH RUBINSTEN,
SUSAN O'CONNOR and NANCY FITZGERALD,

                          Defendants.
-----------------------------------------x

          Plaintiffs, by Kase & Druker and Sandback, Birnbaum &

Michelen, their undersigned counsel, complaining of the

defendants, do hereby allege as follows:

          1.  Plaintiffs Juliet Anilao, Harriet Avila, Mark Dela

Cruz, Claudine Gamaio, Elmer Jacinto, Jennifer Lampa, Rizza

Maulion, James Millena, Theresa Ramos and Ranier Sichon

(hereafter, collectively "the Nurse Plaintiffs") are

citizens of the Philippines and legal residents of the

United States, residing, at all times relevant hereto, in the Eastern District of New York.

2. Plaintiff Felix Vinluan is an attorney duly admitted to practice in the Courts of the State of New York, residing in the Eastern District of New York.

3. Upon information and belief, Thomas J. Spota, III is an individual residing in Suffolk County, New York, and is the duly elected District Attorney of Suffolk County.

4. Upon information and belief, defendant Office of the District Attorney of Suffolk County is a governmental entity and a part of the government of Suffolk County, New York.

5. Upon information and belief, defendant Leonard Lato is an individual residing in Suffolk County, New York, and is a duly appointed Assistant District Attorney of Suffolk County.

6. Upon information and belief, defendant County of Suffolk is a New York State Governmental entity.

7. Upon information and belief, defendant Sentosa Care, LLC. ("Sentosa") is an entity duly organized and existing under the Laws of the State of New York, with its principal place of business in Nassau County, New York.

8. Upon information and belief, defendant Avalon Gardens Rehabilitation and Health Care Center ("Avalon

Gardens") is an entity duly licensed as a Skilled Nursing Facility under the laws of the State of New York.

9. Upon information and belief, defendant Prompt Nursing Employment Agency, LLC. ("Prompt") is an entity duly organized and existing under the Laws of the State of New York, with its principal place of business in Nassau County, New York.

10. Upon information and belief, defendant Francris Luyun is an individual residing in the State of New York, and is a principal of Prompt.

11. Upon information and belief, defendant Bent Philipson is an individual residing in the State of New York. Upon information and belief, he is a principal of Sentosa, Avalon Gardens and Prompt.

12. Upon information and belief, defendant Berish Rubinstein is an individual residing in the State of New York. He is a principal of Prompt.

13. Upon information and belief, defendant Susan O'Connor is an individual residing in the State of New York. At all times relevant hereto, she was the duly appointed administrator of Avalon Gardens.

14. Upon information and belief, defendant Nancy Fitzgerald is an individual residing in the State of New

York. At all times relevant hereto, she was the duly appointed Director of Nursing at Avalon Gardens.

15. This Court has jurisdiction of this action under 28 U.S.C. §1331, over claims arising under 42 U.S.C. §1983.

16. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. §1367(e).

17. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §1391(b), because that is the jurisdiction in which the claims arose, and in which all of the defendants conducted business.

18. Plaintiffs have complied with the provisions of New York General Municipal Law §50-i by the service of a Notice of Claim upon the County of Suffolk within the time required by General Municipal Law §50-e. More than 90 days has elapsed since the filing of that notice.

19. Plaintiffs have submitted to a hearing pursuant to General Municipal Law §50-h at the request of the County of Suffolk.

20. Plaintiffs demand a jury trial of each of the causes of action in this complaint.

**FACTS**

21. The Nurse Plaintiffs were all trained in the Philippines as Nurses and/or Physicians, and were duly licensed in their professions in the Philippines.

4

22. Due to the severe shortage of trained Nurses in the United States, many health care providers recruit nurses in the Philippines to come to the United States and work as nurses.

23. Each Nurse Plaintiff desired to work as a nurse in the United States.

24. Among the entities recruiting nurses in the Philippines is Sentosa Recruitment.

25. Plaintiffs were recruited in the Philippines by Sentosa Recruitment, specifically, by Francris Luyun.

26. Upon information and belief, Luyun and Sentosa Recruitment are beneficially owned by and/or are related to entities owned and/or controlled by Philipson.

27. Upon information and belief, the sole purpose of Sentosa Recruitment Agency, Inc., is to recruit nurses for facilities affiliated with Sentosa Services LLC, an entity which is also owned, in whole or in part, by Bent Philipson.

28. Upon information and belief, the methods of recruitment were approved by Philipson, Luyun, and Rubinstein, and by Sentosa and Prompt.

29. In order to induce each Nurse Plaintiff to sign a contract with Sentosa Recruitment, rather than with the numerous other agencies recruiting nurses in the

Philippines, Sentosa Recruitment, Philipson, and Luyun made certain promises.

30. Among the promises was that the Nurse Plaintiffs would be "direct hire" nurses, employed by the facility in which they worked, rather than "agency" nurses, employed by an agency and assigned to a facility.

31. The Nurse Plaintiffs were also promised eight-hour shifts, night shift differentials, medical and dental benefits, malpractice insurance, two months of free housing, and competitive salary.

32. When these promises were made, defendants Philipson, Luyun, Rubinstein, Sentosa and Prompt ("the Sentosa defendants") knew them to be false, in that they had no intention of providing the promised benefits to the nurses who signed contract with Sentosa facilities.

33. Each Nurse Plaintiff signed a contract to work at a specific facility, each of which was affiliated with Sentosa.

34. None of the Nurse Plaintiffs signed a contract with Avalon Gardens.

35. The contracts provided, *inter alia*, that each Nurse Plaintiff was obligated to work for the facility with which he or she contracted for three years.

36. Each contract further provided that, if the contracting nurse resigned prior to the expiration of three years, a penalty of $25,000 (characterized as "liquidated damages") was to be paid to the facility with which the nurse contracted.

37. The promises made to the Nurse Plaintiffs were not fulfilled in that, *inter alia*, the Nurse Plaintiffs were employed by Prompt as agency nurses rather than as "direct hires" at the specific facility; the Nurse Plaintiffs did not receive the promised insurance; the Nurse Plaintiffs were not permitted to work eight hour shifts; the Nurse Plaintiffs did not receive the promised insurance benefits, vacation, time off, and pay; the Nurse Plaintiffs were housed in overcrowded and substandard housing, and various other promises were not fulfilled.

38. The Sentosa Defendants made or authorized others to make the promises and representations knowing and intending that the Nurse Plaintiffs rely upon them.

39. The Nurse Plaintiffs relied upon the aforementioned representations in selecting and contracting with the Sentosa defendants, rather than with the myriad of other agencies and facilities recruiting in the Philippines.

40. Upon arriving in the United States, the Nurse Plaintiffs were employed by Prompt and assigned to work at Avalon Gardens.

41. The Nurse Plaintiffs soon began to complain about the treatment that they received at Avalon Gardens.

42. Specifically, they complained that their housing was inadequate, and that the two-bedroom house had 8 people residing therein, that they did not receive promised time off, that Sentosa failed to pay the correct hourly wage and failed to pay overtime, and of lack of insurance, staffing shortages, and other serious breaches of each of their contracts by Prompt.

43. They also complained that they were not the direct hire of any facility, but were the employees of Prompt, an employment agency.

44. Their complaints failed to bring any redress to their situation.

45. In order to ascertain their rights, the Nurse Plaintiffs contacted the Philippine Consulate in New York, and requested the name of an attorney who would advise them.

46. The Consulate referred them to Felix Vinluan.

47. After speaking to the Nurse Plaintiffs and evaluating their situation, Vinluan advised them that their

contract had been breached in multiple ways by the Sentosa Defendants, and that the Nurses were, therefore, not bound under that contract to continue their employment.

48. Based upon their understanding that they would not be in breach of their contract, and upon the fact that the Sentosa Defendants refused to remedy their breaches of the contract, the Nurse Plaintiffs resigned their employment on April 7, 2006.

49. In addition to the Nurse Plaintiffs, many other nurses who were recruited in the Philippines by Sentosa Recruitment, working in other Nursing Facilities affiliated with Sentosa, employed by Prompt, and with the same complaints about their employment, also resigned their employment at or about the same time as the Nurse Plaintiffs.

50. In order to prevent additional nurses from resigning, defendant Philipson threatened that the Nurse Plaintiffs and the others who resigned would be prosecuted, deported, faced with license revocation and subjected to a civil suit if they did not return to work.

51. He conveyed this threat at a meeting with the nurses who had not resigned, which took place at the Split Rock Nursing Home, a Sentosa facility in the Bronx. Philipson threatened the nurses at Split Rock that if they

quit, they would face the consequences specified in paragraph 50, above. These threats were made to coerce the nurses to remain at Sentosa as all upcoming shifts had been covered and there was no legitimate future concern about patient care.

52. Avalon Gardens, Prompt, and other Sentosa-affiliated entities then began a series of retaliatory actions against the Plaintiffs, including but not limited to filing a complaint in Nassau County Supreme Court alleging, among other things, breach of contract and tortious interference with contract, seeking to enforce the $25,000.00 liquidated damages clause with a prayer for $50,000,000 in punitive damages.

53. They also sought a preliminary injunction seeking to enjoin the Nurses Plaintiffs and Vinluan from speaking with other nurses about resigning.

54. In April 2006, Avalon Gardens, through defendants O'Connor and Fitzgerald, filed a complaint with the New York State Education Department. That agency licensed nurses and governed their conduct.

55. In June 2006, Justice Stephen Bucaria of the New York State Supreme Court, County of Nassau, denied the motion for an injunction on the express ground that the

plaintiffs failed to establish a "likelihood of success on the merits" on their underlying claims.

56. At that point in time, some of the Nurse Plaintiffs had full nursing licenses while others still operated under a limited permit while their license applications were pending.

57.    In September 2006, the State Education Department sent an e-mail to Plaintiff Vinluan stating that the Nurse Plaintiffs had been fully exonerated of any wrongdoing. The State Education Department determined that the nurses had not committed abandonment, and that they had engaged in neither unprofessional conduct nor immoral conduct in conjunction with their resignations.

58. In order to set an example of by showing the retaliatory measures that would befall other nurses currently employed by Prompt and working at at various Sentosa nursing home facilities, Sentosa proceeded to further retaliate against the nurses who resigned from Avalon.

59. Approximately three weeks after the resignations by the Nurse Plaintiffs at Avalon Gardens, O'Connor, or a person acting at her behest and on behalf of Avalon Gardens, called the Suffolk Police Department to file a complaint.  Upon information and belief, the Police

Department refused to take any action as, in their stated opinion, no crime had been committed.

60. To punish the nurses for withholding their work, Howard Fensterman, the attorney for Sentosa arranged a private meeting between himself and Defendants Spota, Philipson (CEO of Sentosa Care LLC), Luyun, and others.

61. Fensterman, as well as the principals of Sentosa, including Philipson, made substantial contributions to various politicians, and have amassed political power and influence.

62. As a result of their amassed political power and influence, the Sentosa defendants are able to obtain favorable actions from elected officials, which would not be taken for others without Sentosa's influence.

63. For example, at the time of the indictment, United States Senator Charles Schumer interfered, on Sentosa's behalf, with the internal politics of the Philippines, in order to lift a ban on recruiting that the Philippine government had imposed due to Sentosa's improper practices in the Philippines.

64. Upon information and belief, the meeting between the Sentosa defendants, their attorneys, and Defendant Spota was for the purpose of, and had the effect of, pressuring Spota to file an indictment that he would not

otherwise have filed, against the plaintiffs, who were simply acting in a manner that they were constitutionally privileged to act.

65. Plaintiff Felix Vinluan was a particular target of Defendant Philipson's wrath.

66. At his deposition in Sentosa's action in the Supreme Court of Nassau County in January, 2007, some four months before the indictment herein, Philipson identified Plaintiff Vinluan as the person who "orchestrated" the resignation of the nurses.

67. He stated that Mr. Vinluan's "fingerprints" were "all over" the Nurses actions, and that Vinluan was acting in the interests of an organization known as Juno, which was a competitor of Sentosa in the Philippines.

68. Defendant Philipson's assumptions regarding Mr. Vinluan's motives and associations were false.

69. Upon information and belief, it was at Philipson's instance that Spota took the unusual step of indicting an attorney for giving advice to his clients.

70. As a result of that meeting, Defendant Spota assigned the case to one of his deputies, defendant Leonard Lato, chief of the Insurance Crimes Bureau, for the purpose of gathering evidence and securing an indictment.

71. Lato interviewed Vinluan sometime in early November 2006 – assuring Vinluan that he was not a target of the investigation.

72. Lato was provided by Vinluan with significant exculpatory information, including the State Education Department decision and Justice Bucaria's order denying Sentosa's application for preliminary injunction in the pending civil cases, as well as information about the fact that none of the Nurse Plaintiffs had ceased working during a shift.  Nonetheless Lato, with the consent and at the urging of Spota, presented the case to a Grand Jury.

73. Defendant Lato, and other investigators from the Office of the District Attorney of Suffolk County, also interviewed the Nurse Plaintiffs, again falsely informing them that they were not the targets of criminal investigations.

74. The Nurse Plaintiffs participated in the interviews with the understanding that they would be able to close out this investigation and put this incident behind them.  Had they known that they were targets, they would have chosen other courses of conduct, including not participating in the interviews, or demanding to testify before the Grand Jury.

75. In addition, upon information and belief, Defendant Lato deliberately used lurid photographs of children on ventilators to inflame the passions of the grand jurors and to procure a constitutionally invalid indictment for the benefit of the Sentosa defendants, which indictment would not have been procured had the evidence been presented in a proper and professional manner.

76. Had the Plaintiffs understood that they were the targets of the investigation, they would have requested the opportunity to testify before the Grand Jury.

77. Upon information and belief, had they been permitted to testify and explain why they resigned, and that none of them left a shift, and that they had been cleared of wrongdoing by the State Education Department, the governmental agency specifically authorized to review charges of patient abandonment, they would not have been indicted.

78. Nearly one year after the Nurses' resignations, the Grand Jury returned an indictment pursuant to which the Nurse Plaintiffs and Vinluan were arrested and prosecuted in the Supreme Court of New York, Suffolk County. Justice Robert W. Doyle was assigned to preside over the case.

79. The indictment charged the Nurse Plaintiffs and Vinluan with Conspiracy in the Sixth Degree, for allegedly

having conspired to endanger the welfare of a child and a physically disabled person; Solicitation in the Fifth Degree, for allegedly requesting and attempting to cause the nurses to resign; Endangering the Welfare of a Child; and Endangering the Welfare of a Physically Disabled Person.

80. Among the allegations in the indictment was that Plaintiff Vinluan represented "Sentosa Recruitment competitors," that he had "advised the defendant Nurses to resign," and that the purpose of the conspiracy was to "obtain for the Avalon Gardens' nurses alternative employment."

81. These allegations were baseless.

82. Upon information and belief, these allegations were based upon the false testimony of Philipson, and/or other Sentosa employees or principals, before the Grand Jury.

83. Upon information and belief, the presentation of evidence to the Grand Jury was improper, in that, *inter alia*, the Grand Jury was not properly charged as to the law, and the Grand Jury was falsely informed that one or more of the nurses had resigned and left the facility before completing his or her shift. Further, the Grand Jury was not informed that the Education Department had previously determined that the Nurse Plaintiffs had not

violated the Education Law, which would have been fatal to an indictment based entirely upon the duty to patients created by the Education Law.

84. Upon information and belief, the indictment was further based upon knowingly false testimony by Philipson or other Sentosa principals or employees, who falsely asserted that one or more of the Nurse Plaintiffs had walked off during a shift, that shifts were inadequately covered, and that patients, including the children on ventilators whose photographs had been shown to the grand jurors, were endangered.

85. In truth and in fact, as the Sentosa witnesses well knew, none of the Nurse Plaintiffs had walked off a shift, all shifts were adequately covered, and Avalon Gardens had ample means to cover the subsequent shifts of the nurses who resigned.

86. Upon information and belief, the Suffolk Defendants knew that this testimony was false, but nonetheless presented it to the Grand Jury pursuant to their agreement with the Sentosa Defendants.

87. As a result of the indictment, the Plaintiffs were arrested and detained for processing.

88. The Thirteenth Amendment to the U.S. Constitution provides affirmative rights to individuals to be free from indentured servitude.

89. Through the criminal prosecution, the Suffolk County District Attorney violated the constitutional rights of the Nurse Plaintiffs to be free from forced labor.

90. The First Amendment to the U.S. Constitution provides affirmative rights to individuals to, inter alia, exercise free speech and to freely associate with persons of their choosing.

91. By prosecuting Vinluan for exercising his constitutional rights of free speech and free association the criminal action violated the First Amendment.

92. The Fourteenth Amendment to the United States Constitution prohibits the States, and any entity acting pursuant to State law, from depriving individuals of their rights without due process.

93. The prosecution of the Plaintiffs for protected activities, and the procuring of the indictment by improper procedures, including presenting false evidence and improper instructions regarding the law, deprived the Plaintiffs of those rights.

94. Plaintiffs moved to dismiss the indictment against upon the ground, *inter alia*, that the prosecution violated

18

the First and Thirteenth Amendments to the United States
Constitution.

95. That motion was denied by Judge Doyle on Sept. 27,
2007.

96. Thereafter, in March, 2008, the Plaintiffs filed an
application for a Writ of Prohibition in the Appellate
Division, Second Department of the Supreme Court of the
State of New York.

97. On April 14, 2008, the Appellate Division, Second
Department stayed all proceedings in the Supreme Court of
Suffolk County until the hearing and determination of the
petition for a Writ of Prohibition.

98. On January 13, 2009, the Appellate Division, Second
Department, issued a writ of prohibition against the
further prosecution of the indictment.

99. The Court found that the indictment violated the
Nurse Plaintiffs' rights under the Thirteenth and
Fourteenth Amendments by seeking to punish them for
withholding labor.

100. It further found that "the greatest risk created
by the resignation of these nurses was to the financial
health of Sentosa."

101. The Court further found that the indictment of Vinluan violated his rights under the First and Fourteenth Amendment to advise his clients of their rights.

102. Finally, the Court found that a Writ of Prohibition should issue because the Plaintiffs herein were "threatened with prosecution for crimes for which they cannot constitutionally be tried, the potential harm to them is 'so great and the ordinary appellate process so inadequate to redress that harm' that prohibition should lie," citing *Matter of Rush v. Mordue,* 68 N.Y.2d at 354.

103. Thereafter, on October 29, 2009, the indictment was dismissed by the Supreme Court of Suffolk County (Doyle, J.).

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENANTS**

104. Plaintiffs repeat and reallege the allegations in paragraphs 1 - 103 hereof with the same force and effect as if more fully set forth herein.

105. Defendant Spota is the chief law enforcement office of the County of Suffolk.

106. Prosecution decisions by Spota constitute the official policy of the County of Suffolk.

107. Upon information and belief, Spota, Lato, the Office of the District Attorney of Suffolk County, and the County of Suffolk (the "Suffolk Defendants") acted in

concert with, and at the behest of, the Sentosa Defendants, Avalon Gardens, O'Connor and Fitzgerald to secure the indictment of the Plaintiffs.

108. The reason for the indictment was to assist the Sentosa Defendants in their quest to punish the Plaintiffs for their part in resigning, and to discourage other nurses employed by Prompt and working at Sentosa facilities from resigning, no matter how intolerable the conditions.

109. Upon information and belief, the Suffolk Defendants procured an indictment, and prosecuted an alleged crime, that they would not otherwise have prosecuted, because of the procurement by and pressure from the politically powerful Sentosa Defendants.

110. The defendants, and each of them, knew or should have known that the Nurse Plaintiffs could not legally be prosecuted for resigning their employment.

111. The defendants, and each of them, knew or should have known that Vinluan could not legally be prosecuted for giving legal advice to his clients, the Nurse Plaintiffs.

112. The defendants, and each of them, knew or should have known, or recklessly failed to know that the indictment was procured in violation of the Plaintiffs' right to due process under the Fourteenth Amendment, in that the Grand Jury was not properly charged on the law,

was given false evidence, and was not presented with exculpatory evidence.

113. Upon information and belief, the Suffolk Defendants and the Sentosa Defendants agreed that the indictment would be procured, in part, through the use of false testimony by the Sentosa Defendants, as well as by the withholding of exculpatory evidence, the existence of which was known to the Sentosa Defendants and the Suffolk Defendants, and through improper instructions to the Grand Jury regarding the law.

114. Upon information and belief, all of the defendants knew that a proper and professional presentation, which would include a proper charge on the law, and the presentation of exculpatory evidence which the defendants knew to exist, would not have resulted in an indictment of the Plaintiffs. Nevertheless, they agreed to do what was necessary to procure the indictment, for the sole benefit of the Sentosa defendants.

115. All of the actions taken by the defendants, and each of them, were under color of State Law.

116. The indictment, as found by the Appellate Division, Second Department, was violative of the Plaintiffs' rights under the First, Thirteenth, and Fourteenth Amendments.

117. The indictment prevented the Plaintiffs from being able to obtain work in their chosen fields.

118. The indictment caused the Plaintiffs to incur attorneys' fees.

119. The indictment caused the Plaintiffs mental anguish and physical pain.

120. The Plaintiffs were arrested and detained as a result of the indictment.

121. As a direct and proximate result of the misconduct of the Defendants, and each of them, in securing an improper indictment, the plaintiffs sustained damages in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

122. Plaintiffs repeat and reallege the allegations in paragraphs 1 – 121 hereof with the same force and effect as if more fully set forth herein.

123. Defendant Spota, on behalf of the County of Suffolk and the Office of the District Attorney, was obligated to supervise the employees of the Office of the District Attorney to assure that they did not violate the rights of the residents of Suffolk County.

124. Upon information and belief, Spota failed to properly supervise the staff of his office in that this

indictment was procured through improper means and in violation of the constitutional rights of the Plaintiffs.

125. Upon information and belief, both at the time of and after the filing of the indictment, Spota knew or had reason to know about the improprieties in the investigation and grand jury presentation, and about the fact that the indictment violated the Plaintiffs' constitutional rights, but did not take any steps to terminate the prosecution.

126. Upon information and belief, this prosecution was begun and continued at the behest of the Sentosa defendants.

127. Upon information and belief, had it not been for the influence and/or interference of the Sentosa defendants, Spota would not have initiated the prosecution and/or would have discontinued it when he learned of the impropriety of the indictment.

128. All of the actions taken by the defendants, and each of them, were under color of State Law.

129. The indictment, as found by the Appellate Division, Second Department, was violative of the Plaintiffs' rights under the First, Thirteenth, and Fourteenth Amendment.

130. The indictment prevented the Plaintiffs from obtaining work in their chosen fields.

131. The indictment caused the Plaintiffs to incur attorneys' fees.

132. The indictment caused the Plaintiffs mental anguish and physical pain.

133. As a direct and proximate result of the misconduct of the Defendants, and each of them, in securing an improper indictment, the plaintiffs sustained damages in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**

134. Plaintiffs repeat and reallege the allegations in paragraphs 1 – 133 hereof with the same force and effect as if more fully set forth herein.

135. The Suffolk Defendants agreed among themselves, within the scope of their employment and under color of law, and with the Sentosa Defendants, Avalon Gardens, Fitzgerald and O'Connor, to deprive the Plaintiffs of their constitutional rights under the First, Thirteenth and Fourteenth Amendments.

136. The overt acts in furtherance of this conspiracy include the events described above in paragraphs 69-86 hereof, beginning with the meeting among Spota and the Sentosa Defendants, and including the indictment and prosecution of the Plaintiffs.

137. These acts continued until the dismissal of the indictment by the Supreme Court of Suffolk County on October 29, 2009.

138. As a direct and proximate result of this conspiracy, Plaintiffs were wrongfully indicted and prosecuted, and suffered damages as set forth above, in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**

139. Plaintiffs repeat and reallege the allegations in paragraphs 1 - 138 hereof with the same force and effect as if more fully set forth herein.

140. Each of the defendants, lacking probable cause, nonetheless intentionally and recklessly, and with malice, caused the Plaintiffs to be indicted and prosecuted for Conspiracy in the Sixth Degree, for allegedly conspiring to endanger the welfare of a child and a physically disabled person; Solicitation in the Fifth Degree, for allegedly requesting and attempting to cause the nurses to resign; Endangering the Welfare of a Child; and Endangering the Welfare of a Physically Disabled Person.

141. The Sentosa Defendants, together with O'Connor, Fitzgerald, and Avalon Gardens were the complainants in the indictment against the Plaintiffs.

142. The Sentosa Defendants, with the agreement of the Suffolk Defendants, knowingly presented witnesses to the Suffolk Defendants to testify falsely before the Grand Jury.

143. Upon information and belief, the Suffolk Defendants knowingly presented this false testimony to the Grand Jury, in furtherance of their agreement with the Sentosa defendants to procure the indictment of the Plaintiffs despite the fact that the Plaintiffs had not committed any crime.

144. The indictment violated the Plaintiffs' constitutional rights under the First, Thirteenth and Fourteenth Amendments to the Constitution, as set forth above.

145. The Plaintiffs were innocent of the charges against them.

146. The prosecution terminated in the Plaintiffs' favor.

147. As a direct and proximate result of the acts of the defendants, and each of them, the Plaintiffs were prosecuted and suffered the damages set forth above, in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINT ALL DEFENDANTS**

148. Plaintiffs repeat and reallege the allegations in paragraphs 1 - 147 hereof with the same force and effect as if more fully set forth herein.

149. As a result of the indictment, the Plaintiffs were compelled to surrender or risk arrest, and were detained by the Suffolk County Police for processing.

150. The Plaintiffs were conscious of the confinement, and did not consent to it.

151. The Plaintiffs suffered damages, including personal humiliation, from the false arrest and detention, in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE SENTOSA SENTOSA DEFENDANTS, AVALON GARDENS, FITZGERALD AND O'CONNOR**

152. Plaintiffs repeat and reallege the allegations in paragraphs 1 - 151 hereof with the same force and effect as if more fully set forth herein.

153. The Sentosa Defendants, and each of them, conspired among themselves, and with Avalon Gardens, O'Connor and Fitzgerald, to deprive the Plaintiffs of their civil rights.

154. The Sentosa Defendants wanted to punish the Nurse Plaintiffs, and others, for their resignation from the employ of Prompt.

155. The Sentosa Defendants wanted to deter other nurses from resigning from their employment by Prompt.

156. The Sentosa Defendants wanted to punish Vinluan for advising the Nurse Plaintiffs, and other Nurses employed by Prompt, regarding their legal rights with respect to their employment by Prompt.

157. The Sentosa Defendants wanted to deter other attorneys from advising the other nurses regarding their legal rights with respect to their employment by Prompt.

158. In order to obtain these goals, the Sentosa Defendants, together with Avalon Gardens, O'Connor and Fitzgerald, took steps to procure the false indictment against the Plaintiffs.

159. The Sentosa Defendants, together with their politically powerful counsel, met with defendant Spota personally, along with members of his office in order to persuade him to indict the Plaintiffs.

160. Upon information and belief, during the course of that meeting, the Sentosa Defendants gave information to Spota and others at the meeting which was false, and which they knew, believed, or had reason to believe was false.

161. Specifically, upon information and belief, the Sentosa Defendants falsely informed Spota that the Nurse Plaintiffs, or some of them, had resigned and left in the

middle of a shift when, in truth and in fact, as the
Sentosa Defendants well knew, the sole Nurse Plaintiff who
was on shift at the time of the resignations completed her
shift and worked several additional hours.

162. Upon information and belief, the Sentosa
Defendants falsely informed Spota that they were unable to
cover all nursing shifts at Avalon Gardens when, in truth
and in fact, the Avalon Gardens, O'Connor and Fitzgerald
arranged for the same level of coverage for all of the
shifts as had been customary when the Nurse Plaintiffs were
working at Avalon.

163. Upon information and belief, the Sentosa
Defendants falsely informed Spota that Vinluan procured the
Nurse Plaintiffs' resignation because he was recruiting
them for another employment agency when, in truth and in
fact, Vinluan only informed the Nurse Plaintiffs of their
rights, and they determined to resign on their own.

164. In addition, Vinluan acted only as an attorney
advising a client, and not for the benefit of any
employment agency or other entity.

165. Upon information and belief, the Sentosa
Defendants, together with Avalon Gardens, O'Connor and
Fitzgerald, knew that this information was false when they
conveyed it to Spota.

166. Upon information and belief, the said defendants conveyed this information with malice, in order to cause the false indictment and arrest of the Plaintiffs.

167. The said defendants did cause the indictment and arrest of the Plaintiffs.

168. The Plaintiffs were innocent of the charges against them.

169. The prosecution terminated in favor of the Plaintiffs by the dismissal of the indictment.

170. As a result of the actions of the Sentosa Defendants, Avalon Gardens, Fitzgerald and O'Connor, the Plaintiffs sustained the damages as set forth above, in an amount to be determined at trial.

171. The actions of the Sentosa Defendants were directed not only at the Plaintiffs, but generally at all nurses in the employ of Prompt, and all attorneys whom those nurses would approach for advice.

172. Therefore, the Plaintiffs are entitled to punitive damages.

WHEREFORE, the plaintiffs demand judgment:

A. Under the First Cause of Action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

B.    Under the Second Cause of action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

C.    Under the Third Cause of Action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

D.    Under the Fourth Cause of Action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

E.    Under the Fifth Cause of action, against all defendants jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial;

F.    Under the Sixth Cause of Action, against the defendants Sentosa Care, LLC, Avalon Gardens Rehabilitation and Health care Center, Prompt Nursing Employment Agency, LLC, Francris Luyun, Bent Philipson, Berish Rubinstein, Susan O'Connor and Nancy Fitzgerald, jointly and severally, awarding compensatory damages to them, in an amount to be determined at trial

G.    That the Court award Punitive Damages to them, against all individual defendants, and against Sentosa, Prompt, and Avalon Gardens, in an amount to be determined at trial;

H.    For a trial by jury;

I.   Under the First, Second, Third and Fourth Causes
of action, for Attorney's fees, pursuant to 42 U.S.C.
§1988;

J.   For pre-judgment and post-judgment interest, and
recovery of the costs of this action;

K.   For such other and further relief as the Court may
deem just and proper.

Dated:   Garden City, New York
         July 29, 2010

                         Yours, etc.


                         _____
                         JAMES O. DRUKER, ESQ.
                         KASE & DRUKER, ESQS.
                         Attorneys for Plaintiffs
                         ELMER JACINTO, JULIET ANILAO
                         HARRIET AVILA, MARK DELA CRUZ, CLAUDINE
                         GAMIAO, JENNIFER LAMPA, RIZZA MAULION,
                         JAMES MILLENA, MA THERESA RAMOS and
                         RANIER SICHON
                         1325 Franklin Avenue
                         Garden City, New York 11530
                         (516) 746-4300


                         _____
                         OSCAR MICHELEN, ESQ.
                         SANDBACK, BIRNBACK & MICHELEN, ESQS.
                         Attorneys for Plaintiff FELIX VINLUAN
                         200 Old Country Road
                         Mineola, New York
                         (516) 248-8000

I. Under the First, Second, Third and Fourth Causes
of action, for Attorney's fees, pursuant to 42 U.S.C.
§1988;

J. For pre-judgment and post-judgment interest, and
recovery of the costs of this action;

K. For such other and further relief as the Court may
deem just and proper.

Dated: Garden City, New York
       July 29, 2010

Yours, etc.

_____
JAMES O. DRUKER, ESQ.
KASE & DRUKER, ESQS.
Attorneys for Plaintiffs
ELMER JACINTO, JULIET ANILAO
HARRIET AVILA, MARK DELA CRUZ, CLAUDINE
GAMIAO, JENNIFER LAMPA, RIZZA MAULION,
JAMES MILLENA, MA THERESA RAMOS and
RANIER SICHON
1325 Franklin Avenue
Garden City, New York 11530
(516) 746-4300

_____
OSCAR MICHELEN, ESQ.
SANDBACK, BIRNBACK & MICHELEN, ESQS.
Attorneys for Plaintiff FELIX VINLUAN
200 Old Country Road
Mineola, New York
(516) 248-8000