# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

N⁰ 10-CV-00032 (JFB) (WDW)
_____

## JULIET ANILAO, ET AL.,

Plaintiffs,

VERSUS

## THOMAS J. SPOTA, III, INDIVIDUALLY AND AS DISTRICT ATTORNEY OF SUFFOLK COUNTY, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
January 25, 2013
_____

JOSEPH F. BIANCO, District Judge:

Juliet Anilao, Harriet Avila, Mark Dela Cruz, Claudine Gamaio, Elmer Jacinto, Jennifer Lampa, Rizza Maulion, James Millena, Theresa Ramos, Ranier Sichon (the "nurse plaintiffs" or "nurses"), and Felix Q. Vinluan ("Vinluan") (collectively, "plaintiffs") brought this action against Thomas J. Spota, III, individually and as District Attorney of Suffolk County ("District Attorney Spota" or "Spota"), the Office of the District Attorney of Suffolk County ("the DA's Office"), Leonard Lato, individually and as Assistant District Attorney of Suffolk County ("Lato"), and the County of Suffolk (collectively, the "County defendants"), as well as against Sentosa Care, LLC ("Sentosa Care"), Avalon Gardens Rehabilitation and Health Care Center ("Avalon Gardens"), Prompt Nursing Employment Agency, LLC ("Prompt"), Francris Luyun ("Luyun"), Bent Philipson ("Philipson"), Berish Rubenstein ("Rubenstein"), Susan O'Connor ("O'Connor"), and Nancy Fitzgerald ("Fitzgerald") (collectively, the "Sentosa defendants"), alleging that the County defendants and the Sentosa defendants violated plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983.

Presently before the Court is a motion by plaintiffs to unseal the minutes of the proceedings of, and release the exhibits presented to, the Grand Jury under Indictments 00769A-07 through 00769K-07, which charged plaintiffs with endangering the welfare of a child, endangering the welfare of a physically disabled person,

conspiring to do the same, and solicitation. Plaintiffs contend that "[i]n this unique case, the plaintiffs have shown that the minutes of the grand jury proceedings are critical to their case" and "[t]he public interest in the integrity of prosecutions, and the resolution of the serious issues in this case should outweigh the usual reasons for grand jury secrecy." (Pls.' Mot. to Unseal at 3.) Defendants County of Suffolk and Lato oppose the motion and argue, *inter alia*, that "[w]here, as here, the parties will have the ability to examine witnesses (including the prosecutor that presented the matter to the grand jury) by deposition and to obtain statements made by them, there exists other means to obtain information without invading the sanctity of the grand jury proceeding." (Defs.' Opp'n to Mot. to Unseal at 3.)[1] For the reasons set forth below, after careful consideration of the issue, the Court concludes that plaintiffs' motion should be granted.

This Court recognizes, as has been articulated in both Supreme Court and Second Circuit jurisprudence, the importance of grand jury secrecy and the strong policy considerations that support such secrecy. In this unusual case, however, plaintiffs have met their burden and have made a more than sufficient showing of need for inspection of the Grand Jury materials. Plaintiffs have therefore overcome the need for continued grand jury secrecy in this case under the well-established test for analyzing motions to unseal grand jury materials.

First, plaintiffs have certainly demonstrated a particularized and compelling need for disclosure of the Grand Jury materials based upon the history of this case, the specific allegations in the complaint, and the Court's *ex parte* review of the Grand Jury materials. Although defendants contend that plaintiffs' arguments for access are speculative, the Court disagrees. As a threshold matter, the Second Department took the extraordinary step of issuing a writ of prohibition against further prosecution of the Indictment because it found that the criminal prosecution was an impermissible infringement on the constitutional rights of both the nurses and their attorney, and that, as a result, plaintiffs were being prosecuted for crimes for which they could not constitutionally be tried. Additionally, plaintiffs do not simply make conclusory allegations of wrongdoing, but rather, point to specific alleged misconduct by the prosecution in the Grand Jury, including falsely informing the Grand Jury that one or more of the nurses had resigned during a shift and failing to tell the Grand Jury that the Education Department had already determined that the nurse plaintiffs had not violated the Education Law (even though the Education Law was the basis for the duty to the patients contained in the Indictment). Although prosecutors have absolute immunity for any alleged misconduct in the grand jury, access to the Grand Jury materials is indispensable in this case to plaintiffs' ability to, among other things, (1) prove the Section 1983 conspiracy claim against the Sentosa defendants (who have no such immunity) and against the County defendants (during the investigative phase), and (2) rebut the presumption of probable cause that would otherwise attach to the Indictment in connection with plaintiffs' false arrest and malicious prosecution claims. Moreover, although the County defendants argue that any such request to unseal the Grand Jury materials should await the outcome of discovery, the Court does not

---

[1] Although the Sentosa defendants did not file a written opposition, counsel for the Sentosa defendants orally opposed plaintiffs' motion at oral argument on January 16, 2013.

believe that such a delay will be productive or change the analysis in this particular case because, among other things, (1) the prosecutor is not permitted to discuss what transpired in the Grand Jury at a deposition (absent relief from the Court), (2) without the Grand Jury materials, plaintiffs will be unable to fully determine which witnesses to focus on in the discovery phase, and (3) there is a significant risk that witnesses' memories have faded due to the long passage of time since the events in question. Thus, postponing this determination will, in this case, result in unnecessary delay, duplication of effort, and most importantly, will significantly hinder plaintiffs' ability to conduct thorough and meaningful discovery with respect to their claims. In short, this is clearly a compelling situation for authorizing access to grand jury materials to plaintiffs who are attempting to vindicate the alleged violation of their civil rights in the aftermath of an Indictment that a state court dismissed and found infringed on plaintiffs' constitutional rights. Such a release is necessary, under the circumstances of this particular case, to avoid an injustice by unnecessarily hampering plaintiffs' ability to fully develop the proof for their civil rights claims.

Second, the Court finds that the need for disclosure of the Grand Jury materials is much greater than the need for continued secrecy. The policy considerations underlying grand jury secrecy are extremely weak in this particular case. For example, there is no interference with any aspect of the grand jury process or an ongoing law enforcement investigation/prosecution because the Indictment has been dismissed and the criminal case has been completed for several years. Similarly, there is no need to protect any individuals innocently accused or investigated because the plaintiffs were publically indicted and

named as defendants before the case was dismissed. In essence, the only policy consideration favoring secrecy in this case is the need to encourage witnesses to testify freely in future grand juries without fear that their testimony will later become public. Although that is certainly an important policy consideration, it is overwhelmingly outweighed in this case by the particular and compelling need for disclosure. In fact, the Supreme Court, Suffolk County, has already reviewed the Grand Jury minutes in this case and (although ultimately deferred to this Court) found, after balancing these considerations, that there was "ample reasons to release the grand jury minutes, testimony and exhibits." *In re Druker*, No. 11-12243, slip op. at 4 (Sup. Ct. Suffolk Cnty. May 8, 2012). Thus, disclosure in this case does not violate the strong policy of comity between state and federal sovereignties because a state court has thoroughly considered the important state interest in secrecy and has already opined that the privilege of secrecy in state grand jury proceedings would not be undermined by disclosure in this case.

Finally, the Court has carefully reviewed the Grand Jury transcript to determine whether plaintiffs' request has been structured to cover only the material needed. In other words, the Court reviewed the entire transcript to determine whether the testimony of all witnesses and all minutes of the Grand Jury proceedings are needed, or whether some more targeted disclosure would address plaintiffs' compelling basis for disclosure. After a careful review, the Court has not identified any portion of the materials that can be held back without significantly hindering plaintiffs' ability to utilize the materials for the compelling reasons articulated by them. The allegations in this case are broad, and include an anticipated challenge to the probable cause

determination by the Grand Jury. Therefore, in this particular case, based upon the Court's review of the entire transcript, a compelling basis has been demonstrated for disclosure of all of the Grand Jury materials.

Accordingly, the Court concludes, as discussed in detail below, that disclosure of the Grand Jury materials to the parties is warranted. However, before the materials are disclosed, the Court will place restrictions on their dissemination at this juncture to ensure that they are not disclosed to the public, even though they are being made available to the parties for purposes of discovery in this litigation.

## I. BACKGROUND

### A. Facts[2]

### 1. Events Leading Up to Grand Jury Indictment

Each of the nurse plaintiffs is a citizen of the Philippines and a legal resident of the United States. (Am. Compl. ¶ 1.) Sentosa Recruitment Agency, Inc. ("Sentosa Recruitment"), operating through individual defendant Luyun, recruited the nurse plaintiffs in this case to come and work as nurses in the United States. (*Id.* ¶¶ 25, 29-31.) Plaintiffs allege that Sentosa Recruitment made a number of knowingly false promises to induce them to sign contracts to work in the United States. (*Id.* ¶¶ 29-32.) Acting in reliance on these promises, each plaintiff signed a contract to work at a specific facility affiliated with Sentosa; none of the plaintiffs, however, signed a contract with Avalon Gardens. (*Id.*

¶¶ 33-34, 39.) The contracts provided, *inter alia*, that plaintiffs would be required to work at the facilities with which they contracted for a period of three years, and that if they resigned prior to that time, they would be required to pay a $25,000 penalty. (*Id.* ¶¶ 35-36.)

Upon arriving in the United States, plaintiffs were employed by Prompt and assigned to work at Avalon Gardens. (*Id.* ¶ 40.) Plaintiffs claim that they began to complain about the conditions at Avalon Gardens soon after their arrival, but that the alleged problems were never resolved. (*Id.* ¶¶ 40, 44.) Indeed, plaintiffs allege that the Sentosa defendants breached the promises made to the nurses in a variety of respects. (*Id.* ¶ 37.) Plaintiffs claim that they contacted the Philippine Consulate in New York for a referral to an attorney who could advise them of their rights. (*Id.* ¶ 45.) The Consulate referred them to Vinluan, who advised them that their employment contracts had already been breached in multiple ways by the Sentosa defendants and that, accordingly, they were not bound under those contracts to continue their employment. (*Id.* ¶¶ 46-47.) Based upon this advice of counsel, and upon the fact that the Sentosa defendants allegedly refused to remedy any of the problems plaintiffs complained of, plaintiffs resigned their employment on April 7, 2006. (*Id.* ¶ 48.)

Avalon Gardens, Prompt, and other Sentosa-affiliated entities then began taking a series of retaliatory actions against plaintiffs, including filing a complaint in Nassau County Supreme Court alleging, *inter alia*, breach of contract and tortious interference with contract and seeking to enforce the $25,000 penalty in plaintiffs' contracts and $50,000 in punitive damages. (*Id.* ¶ 52.) They also sought a preliminary injunction to enjoin plaintiffs from speaking with other nurses about resigning, (*id.* ¶ 53),

---

[2] Given that the Court has already issued a written Memorandum and Order in this case, the Court assumes familiarity with the case for purposes of this motion. The following facts relevant to the issues at hand are taken mainly from the amended complaint and are not findings of fact by the Court.

4

and filed a complaint with the New York State Education Department, which is responsible for licensing nurses and governing their conduct, (*id.* ¶ 54.) Additionally, approximately three weeks after plaintiffs resigned, defendant O'Connor, or another person acting at her behest and on behalf of Avalon Gardens, called the Suffolk County Police Department to file a complaint. (*Id.* ¶ 59.) According to the amended complaint, these retaliatory actions ultimately failed. For example, the Suffolk County Police Department refused to take any action against plaintiffs because, "in their stated opinion, no crime had been committed." (*Id.*) Moreover, in June 2006, Justice Stephen Bucaria of the New York State Supreme Court denied the Sentosa entities' motion for preliminary injunction on the ground that they had failed to establish a likelihood of success on the merits. (*Id.* ¶ 55.) Finally, in September 2006, the Education Department sent an email to Vinluan stating that plaintiffs had been fully exonerated of any wrongdoing. (*Id.* ¶ 57.)

Howard Fensterman ("Fensterman"), attorney for Sentosa Care, allegedly arranged a private meeting with District Attorney Spota, Philipson, Luyun, and others. (*Id.* ¶ 60.) Plaintiffs assert that Fensterman and principals of Sentosa have made substantial contributions to various politicians and, as a result, have "amassed political power and influence," enabling them to obtain favorable actions from elected officials. (*Id.* ¶¶ 61-62.) Plaintiffs claim that, as a result of the meeting, Spota assigned the case to one of his deputies, defendant Lato, "for the purpose of gathering evidence and securing an indictment." (*Id.* ¶ 70.) In early November 2006, Lato interviewed Vinluan, (*id.* ¶ 71,) who provided Lato with "significant exculpatory information," (*id.* ¶ 72.) Plaintiffs claim that, "[n]onetheless[,] Lato,

with the consent and at the urging of Spota, presented the case to a Grand Jury." (*Id.*)

Plaintiffs make numerous allegations of wrongdoing involving the presentation of evidence to, and the procuring of the Indictment from, the Grand Jury. Plaintiffs also claim that the allegations in the Indictment against Vinluan — that Vinluan "advised the defendant Nurses to resign" and that the purpose of the conspiracy was to obtain alternative employment for the nurses — were baseless and were founded upon false testimony of Philipson and possibly other Sentosa employees or principals. (*Id.* ¶¶ 80-82.) Likewise, plaintiffs assert that "the [I]ndictment was further based upon knowingly false testimony by Philipson or other Sentosa principals . . . that one or more of the Nurse Plaintiffs had walked off during a shift, that shifts were inadequately covered, and that patients, including the children on ventilators . . . were endangered." (*Id.* ¶ 84.) Plaintiffs claim that both the Sentosa witnesses and the County defendants "knew that this testimony was false, but nonetheless presented it to the Grand Jury pursuant to their agreement with the Sentosa Defendants." (*Id.* ¶¶ 85-86.) Finally, plaintiffs allege that the Grand Jury was not properly charged on the law, was falsely informed that one or more of the nurses had resigned during their shifts, and was not told that the Education Department had already determined that the nurse plaintiffs had not violated the Education Law. (*Id.* ¶ 83.)

2. Grand Jury Indictment and Subsequent Dismissal of the Indictment

Approximately one year after plaintiffs' resignations, the Grand Jury returned an Indictment charging plaintiffs and Vinluan with endangering the welfare of a child, endangering the welfare of a physically disabled person, conspiring to do the same,

and solicitation (for allegedly requesting and attempting to cause the nurses to resign). (*Id.* ¶¶ 78-79.) Plaintiffs were arrested as a result of the Indictment. (*Id.* ¶ 87.) Plaintiffs moved to dismiss the Indictment on the grounds that, *inter alia*, the prosecution violated the nurse plaintiffs' Thirteenth Amendment rights and Vinluan's First Amendment rights. (*Id.* ¶ 94.) Their motion was denied by the state trial court judge on September 27, 2007. (*Id.* ¶ 95.) Plaintiffs thereafter filed an application for a writ of prohibition with the Appellate Division, which stayed all proceedings pending a determination on plaintiffs' petition. (*Id.* ¶¶ 96-97.) On January 13, 2009, the Appellate Division issued a writ of prohibition against further prosecution of the Indictment, finding that the criminal prosecution "constitute[d] an impermissible infringement upon the constitutional rights of these nurses and their attorney, and that the insurance of a writ of prohibition to halt these prosecutions is the appropriate remedy in this matter." *Vinluan v. Doyle*, 60 A.D.3d 237, 240 (2d Dep't 2009).

The Appellate Division explained that, because the Indictment explicitly made "the nurses' conduct in resigning their positions a component of each of the crimes charged . . . the prosecution ha[d] the practical effect of exposing the nurses to criminal penalty for exercising their right to leave their employment at will." *Id.* at 248. In addition, "although an employee's abandonment of his or her post in an 'extreme case' may constitute an exceptional circumstance which warrants infringement upon the right to freely leave employment, the respondent District Attorney proffer[ed] no reason why this [was] an 'extreme case.'" *Id.* at 249. Indeed, the court noted that the nurses did not abandon their posts in the middle of their shifts, but instead resigned after the completion of their shifts. *Id.* Accordingly, although the nurses' resignation may have

made it difficult for Sentosa to find skilled replacement nurses in a timely fashion, it was "undisputed that coverage was indeed obtained, and no facts suggesting an imminent threat to the well-being of the children [were] alleged." *Id.* Thus, the court explained:

> [W]e cannot conclude that this is such an "extreme case" that the State's interest in prosecuting the petitioners for misdemeanor offenses based upon the speculative possibility that the nurses' conduct could have harmed the pediatric patients at Avalon Gardens justifies abridging the nurses' Thirteenth Amendment rights by criminalizing their resignations from the service of their private employer.

*Id.*

As to Vinluan, the court found that his prosecution "impermissibly violate[d] [his] constitutionally protected rights of expression and association in violation of the First and Fourteenth Amendments." *Id.* at 250. In so holding, the court relied upon the Supreme Court's instruction that "'[t]he First and Fourteenth Amendments require a measure of protection for advocating lawful means of vindicating legal rights including advising another that his legal rights have been infringed.'" *Id.* (quoting *In re Primus*, 436 U.S. 412, 432 (1978)) (internal quotation marks and alterations omitted). The Appellate Division found that the Indictment impermissibly sought to punish Vinluan for exercising his First Amendment right to provide legal advice, and held that "it would eviscerate the right to give and receive legal counsel with respect to potential criminal liability if an attorney could be charged with conspiracy and solicitation whenever a District Attorney disagreed with that advice." *Id.* at 251.

Accordingly, the court concluded that "[w]here, as here, the petitioners are threatened with prosecution for crimes for which they cannot constitutionally be tried, the potential harm to them is 'so great and the ordinary appellate process so inadequate to redress that harm' that prohibition should lie." *Id.* (quoting *Rush v. Mordue*, 68 N.Y.2d 348, 354 (1986)). The court analogized the situation to one in which a defendant was about to be prosecuted in violation of his constitutional right against Double Jeopardy or in violation of his Fifth Amendment right against self-incrimination — which would likewise present situations in which a defendant was being prosecuted for a crime for which he could not be constitutionally tried — and, thus, granted plaintiffs' petition and prohibited District Attorney Spota from prosecuting plaintiffs under the Indictment. *Id.* at 244. The Indictment against plaintiffs was dismissed by the Supreme Court, Suffolk County on October 29, 2009.

B. Procedural History

1. Actions Prior to Requests for Unsealing of Grand Jury Materials

Plaintiffs filed their complaint on January 6, 2010. The County defendants filed a motion to dismiss on March 23, 2010, as did the Sentosa defendants. On May 10, 2010, plaintiffs filed an opposition to both motions to dismiss. The Sentosa defendants filed a reply on June 14, 2010, and the County defendants replied on June 15, 2010. On July 8, 2010, the Court held oral argument and gave plaintiffs leave to file an amended complaint. Plaintiffs filed their amended complaint on July 29, 2010. On August 19, 2010, the Sentosa defendants and the County defendants filed supplemental letters in support of their motions to dismiss the amended complaint. Plaintiffs filed supplemental responses in opposition on September 7, 2010. The County defendants

and the Sentosa defendants filed supplemental replies on September 21 and September 22, 2010, respectively.

On March 31, 2011, the Court issued a written Memorandum and Order, granting in part and denying in part defendants' motions to dismiss. As to the County defendants, the Court concluded the following: (1) the individual County defendants are entitled to absolute immunity for conduct taken in their role as advocates in connection with the presentation of the case to the Grand Jury; (2) the individual County defendants are not entitled to absolute immunity for alleged misconduct during the investigation of plaintiffs, but the Court could not determine, at that time, whether the individual County defendants are entitled to qualified immunity for their actions in the investigation phase; (3) plaintiffs have sufficiently pled Section 1983 claims against the individual County defendants for alleged Due Process violations in the investigation phase; and (4) plaintiffs have sufficiently pled a claim for municipal liability against the County of Suffolk. As to the Sentosa defendants, the Court concluded the following: (1) plaintiffs have sufficiently alleged that they were acting under color of state law, and (2) plaintiffs have sufficiently pled claims for malicious prosecution and false arrest under both Section 1983 and state law, as well as a Section 1983 conspiracy claim. The Court dismissed, without prejudice, the claims against defendants O'Connor and Fitzgerald for (1) plaintiffs' failure to plead that the two defendants were acting under color of state law, and (2) plaintiffs' failure to satisfy the elements of the state-law malicious prosecution and false arrest claims against the two defendants.

The Sentosa defendants filed an answer to plaintiffs' amended complaint on April 13, 2011. The County defendants filed an

answer to the amended complaint on April 14, 2011. On May 3, 2011, the Sentosa defendants filed an amended answer to plaintiffs' amended complaint, adding a counterclaim under New York Civil Rights Law § 70-a. On June 13, 2011, plaintiffs filed a motion to dismiss the Sentosa defendants' counterclaim. The Sentosa defendants filed an opposition on July 13, 2011, and plaintiffs filed a reply on July 20, 2011. On September 21, 2011, the Court held oral argument and denied plaintiffs' motion. Plaintiffs subsequently filed an answer to the Sentosa defendants' counterclaim on September 22, 2011, and on October 7, 2011, Magistrate Judge Wall set a discovery schedule.

### 2. Plaintiffs' Requests to Unseal Grand Jury Materials

Plaintiffs then petitioned the Supreme Court, Suffolk County for a judgment permitting them to obtain a copy of the minutes, exhibits, and testimony of the state Grand Jury that indicted them. The Supreme Court, Suffolk County granted the petition and issued a written decision on May 8, 2012, expressing its opinion that the Grand Jury materials should be released, but asking this Court to make the final determination. The state court first indicated the relevant New York State Criminal Procedure provisions and listed the many policy reasons for grand jury secrecy: (1) prevention of flight by a defendant about to be indicted; (2) protection of grand jurors from those under investigation; (3) prevention of tampering with prospective witnesses at trial, should an indictment issue; (4) protection of an innocent accused of unfounded accusations if no indictment is returned; and (5) assurance of secrecy to prospective grand jury witnesses so that they will be willing to testify freely. *In re Druker*, No. 11-12243, slip op. at 3 (quoting *People v. Di Napoli*, 27 N.Y.2d 229, 335 (1970)).

The court also explained that a party requesting disclosure of grand jury materials must show a "compelling and particularized need", *id.* at 4 (citing *Peple v. Robinson*, 98 NY2d 755 (2002)), and indicated the following reasons advanced by plaintiffs for why they need the materials:

> The petitioners contend, among other things, that disclosure is required under these facts to establish their claims that the County defendants conspired with the Sentosa defendants to procure false evidence and present it to the grand jury as well as to hide exculpatory evidence from the grand jury, that both sides in the federal court litigation have a particularized need for the information, and that the Eastern District action is a matter of public interest, involving alleged wrongdoing on the part of public officials.

*Id.*

The court then evaluated the policy considerations related to grand jury secrecy and concluded that "there are ample reasons to release the grand jury minutes, testimony and exhibits." *Id.* The court was persuaded by the following findings: (1) because the Indictments were dismissed, there is no risk that a defendant about to be indicted will take flight; (2) because the Grand Jury concluded its proceedings, there is no risk of interference from those under investigation or subornation of perjury and tampering with prospective witnesses; (3) plaintiffs were the accused under the Indictments, so they require no protection from unfounded accusations; (4) if it is established that the Sentosa defendants testified falsely before the Grand Jury, they cannot claim they relied on secrecy in exchange for their willingness to testify freely; and (5)

disclosure would not have a chilling effect on the ability of future grand juries to obtain witnesses, especially in this case, where the "public's interest in accurate information about its public officials outweighs the assurance of secrecy for witnesses in future grand jury proceedings." *Id.* (quoting *Jones v. State*, 79 A.D.2d 273 (4th Dep't 1981)).

Despite the fact that the state court found compelling reasons to release the Grand Jury materials, the court, "mindful of the limited record submitted in th[e] special proceeding" and its limited knowledge "of the progress of discovery in [the federal civil] action", deferred to this Court for a final determination of whether the materials requested should be disclosed. *Id.* at 5. Accordingly, the Supreme Court, Suffolk County entered a Judgment on June 27, 2012 directing the Suffolk County District Attorney's Office to deliver the entirety of the Grand Jury proceedings to this Court *in camera* for a determination of what information, if any, contained therein should be released to the parties.

On July 11, 2012, plaintiffs filed a letter motion to unseal the Grand Jury minutes with this Court. The County defendants filed an opposition on August 11, 2012 and plaintiffs filed replies on August 14, 2012. On September 28, 2012, plaintiffs filed a further reply in support of their motion to unseal, noting that they are amenable to the Court imposing any reasonable restrictions on the use of the Grand Jury materials. On January 4, 2013, plaintiffs again filed a letter with this Court, requesting that the Court render a decision on their pending motion to unseal so that discovery can proceed accordingly. On January 16, 2013, the Court held oral argument. On January 17, 2013, plaintiffs filed a post-argument letter addressing an issue that was discussed at oral argument. The Court has fully considered the submissions of the parties.

Moreover, the Court has reviewed *in camera* the transcript of the Grand Jury proceedings.

## II. POWER OF FEDERAL COURT TO COMPEL DISCLOSURE OF GRAND JURY TRANSCRIPTS

In general, requests for disclosure of grand jury materials should be first directed to the court that supervised the grand jury's activities. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 224-25 (1979) ("Indeed, those who seek grand jury transcripts have little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the transcripts."). Thus, as a matter of comity, a party seeking disclosure of materials from a state grand jury proceeding for purposes of a federal civil lawsuit should "first make [its] application to the state court supervising the grand jury at issue." *Ruther v. Boyle*, 879 F. Supp. 247, 250 (E.D.N.Y. 1995). "This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered." *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 644 (7th Cir. 1980).

However, because "a federal court is not bound by state law protecting the secrecy of state grand jury proceedings", the federal court presiding over the federal civil lawsuit must then make "an independent determination of whether the grand jury transcripts should be released" if the state court denies the request and the party seeking disclosure challenges that decision before the federal court. *Frederick v. New York City*, 11 Civ. 469 (JPO), 2012 WL 4947806, at *11 (S.D.N.Y. Oct. 11, 2012) (internal citations and quotation marks omitted) (concluding that comity does not require acceptance of state court's denial of plaintiff's request to unseal grand jury

minutes); *see also Douglas Oil Co.*, 441 U.S. at 230 (explaining that, although the supervisory court is usually in the best position to evaluate the competing needs of secrecy and disclosure, courts in which related civil actions are pending are "armed with . . . special knowledge of the status of the civil actions"). Nevertheless, if the federal court can recognize state privileges "at no substantial cost to substantive and procedural policy", the "strong policy of comity between state and federal sovereignties" urges the federal court to do so. *Frederick*, 2012 WL 4947806, at *11 (quoting *Wilson v. City of New York*, 06 Civ. 229, 2007 WL 4565138, at *1 (E.D.N.Y. Dec. 21, 2007)).

Here, plaintiffs correctly applied first to the Supreme Court, Suffolk County – the court in which the Grand Jury had been empaneled. Judge Garguilo of the Supreme Court, Suffolk County considered New York state law on the issue, as well as the relevant policy considerations, and determined that the Grand Jury minutes, testimony, and exhibits should be released. However, because of the "limited record submitted in [the] special proceeding" held before the court to unseal the materials and the court's limited knowledge of the "progress of discovery" in the federal action, the court directed that the Grand Jury materials be released *in camera* to the Judge and/or Magistrate Judge assigned to the federal action "for his or her determination regarding what information contained therein should be released to the parties in that action, and when and how it should be released." *In re Druker*, slip op. at 5 ("It is clear that the trial court has discretion to control the method and manner of disclosure of grand jury proceedings." (citations omitted)).

In *Douglas Oil Co. of California v. Petrol Stops Northwest*, the Supreme Court

contemplated situations like this one – situations where the court presiding over the grand jury proceeding determines that the grand jury materials should be released, but does not have firsthand knowledge of the pending federal civil suit for which disclosure of the materials is sought. 441 U.S. at 226.[3] The Court recommended that, in such situations, the court that empaneled the grand jury should "mak[e] a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate, [and] send the requested materials to the court where the civil case[] [is] pending." *Id.* at 230. That is precisely what the Supreme Court, Suffolk County did here. (*See* Pls.' Mot. to Unseal Ex. B. (setting forth state court's knowledge of the pending federal civil suit, state law regarding the need for grand jury secrecy, state law and policy considerations leading to state court's determination that disclosure is appropriate, and reasons for submitting the materials to federal court for *in camera* review).) Accordingly, this Court is imbued with the power to make an independent determination of whether the Grand Jury materials requested should be released and, if so, the degree to which and the manner by which they should be disclosed. The Court is mindful of the doctrine of comity, and has therefore considered state privileges – to the extent doing so does not come at the cost of federal

---

[3] The Court notes that the specific situation the Supreme Court was faced with was one where a federal grand jury was empaneled by one district (the Central District of California) and the federal civil action for which disclosure of the grand jury materials was sought was pending in another district (the District of Arizona). This case raises a slightly different factual context – a grand jury empaneled in state court and a civil suit pending in the same state, but in federal court. Because the same practical and policy considerations apply, the Court follows the reasoning of the Supreme Court in *Douglas Oil*.

substantive and procedural policy – in making its determination.

### III. Legal Standard For Disclosing Grand Jury Materials

Since the 17th century, grand jury proceedings, as well as the records of such proceedings, have been reserved from the public. *Douglas Oil Co.*, 441 U.S. at 219. Accordingly, there is a "long-established policy [of] maintain[ing] the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958); *see also In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 28 (2d Cir. 1981) ("This time-honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings."). Moreover, the requirement of grand jury secrecy is codified in Federal Rule of Criminal Procedure 6(e), which provides that "[a] grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony [or] an attorney for the Government . . . shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . . A knowing violation of rule 6 may be punished as a contempt of court." *Douglas Oil Co.*, 441 U.S. at 218 n.9 (quoting Fed. R. Crim. P. 6(e)).

The Supreme Court has enumerated the following reasons for grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subordination of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Procter & Gamble Co.*, 356 U.S. at 681 n.6 (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954)). In particular, the Court has emphasized that secrecy in the grand jury context serves to encourage witnesses to testify freely, without fear of retaliation: "The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Id.* at 682; *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) ("[I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly . . . ."). "Grand jury secrecy, then, is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *Sells Eng'g*, 463 U.S. at 424 (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)).

Despite this long-standing tradition of maintaining the secrecy of grand jury proceedings, it has been recognized that disclosure may be warranted in certain situations. In particular, Federal Rule of Criminal Procedure 6(e)(3)(E)(i) provides that disclosure of grand jury transcripts may

be made when so directed by a court "preliminarily to or in connection with a judicial proceeding."[4] The Supreme Court has set forth a tripartite analysis to guide lower courts in determining when disclosure of traditionally kept secret grand jury transcripts may be appropriate: "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co.*, 441 U.S. at 222 (citing *Procter & Gamble Co.*, 356 U.S. at 682-83 and *Dennis v. United States*, 384 U.S. 855, 872 (1966)). The burden of demonstrating that the need for disclosure is greater than the public interest in secrecy is a heavy one, and it rests with the party seeking disclosure. *See id.* at 223. Thus, a party seeking the

disclosure of grand jury minutes must make a strong showing of "particularized need" for those materials. *See Sells Eng'g*, 463 U.S. at 443; *In re Craig*, 131 F.3d at 104 n.5 (reciting *Douglas Oil*'s "highly flexible 'particularized need' test for parties seeking to compel disclosure under Rule 6(e)").[5,6] A showing of "mere relevance, economy, and efficiency will not suffice." *Pizutti v. United States*, 809 F. Supp. 2d 164, 194 (S.D.N.Y. 2011) (citation omitted). Moreover, unspecific allegations of need or mere speculation are not adequate. *United States v. Anderson*, 12CR29A, 2012 U.S. Dist. LEXIS 164215, at *13 (W.D.N.Y. Nov. 16, 2012); *see also In re Craig*, 131 F.3d at 105 (stating that "blanket assertion" of public interest in information contained in grand jury transcripts is not alone enough to warrant disclosure of the materials).

This showing of "particularized need" is not only required when the transcripts requested are from an ongoing grand jury proceeding. A party requesting materials from a grand jury who has concluded its operations must similarly satisfy the "particularized need" test set forth in *Douglas Oil*. This is because disclosure of those transcripts may affect future grand juries, as persons called upon to testify might consider the likelihood that their testimony will be disclosed to the public

---

[4] Federal Rule of Criminal Procedure 6(e) also provides four other exceptions to the rule of grand jury secrecy: (1) a court may grant the request of a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury", Fed. R. Crim. P. 6(e)(3)(E)(ii); (2) a court may grant the request of the government "when sought by a foreign court or prosecutor for use in an official criminal investigation", *id.* at 6(e)(3)(E)(iii); (3) a court may grant the request of the government "if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate" entity or official for the purpose of enforcing that law, *id.* at 6(e)(3)(E)(iv); and (4) at the request of the government "if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law," *id.* at 6(e)(3)(E)(v). Additionally, the Second Circuit has held that a court has power to release grand jury minutes in situations beyond the three instances spelled out in Rule 6(e). *See In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997) (citing *In re Biaggi*, 478 F.2d 489, 494 (2d Cir. 1973) (supplemental opinion) and *In re Hastings*, 735 F.2d 1261, 1268 (11th Cir. 1984)).

[5] This "particularized need" test applies both in cases where a party seeks to disclose federal grand jury materials, and in cases where a party requests to disclose materials from a state grand jury proceeding. *See Myers v. Phillips*, 04 Civ 4365, 2007 WL 2276388, at *2 (E.D.N.Y. Aug. 7, 2007).

[6] The Supreme Court has found that the "particularized need" requirement is typically met by a showing that the grand jury transcript could be used "to impeach a witness, to refresh his recollection, to test his credibility and the like." *Douglas Oil Co.*, 441 U.S. at 222 n.12 (quoting *Procter & Gamble Co.*, 356 U.S. at 683; *see also In re Air Cargo Shipping Servs. Antitrust Litig.* No. 06-MD-1775, 2012 WL 5989756, at *1 (E.D.N.Y. Oct. 24, 2012).

later and, as a result, think twice about giving "frank and full testimony." *United States v. Sobotka*, 623 F.2d 764, 767 (2d Cir. 1980) ("Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." (citation omitted)); *see also In re EyeCare Physicians of Am.*, 100 F.3d 514, 518 (7th Cir. 1996) ("District courts that contemplate ordering disclosure must consider the possible effects upon the functioning of future grand juries." (citation omitted)).

The court called upon to determine whether grand jury transcripts should be disclosed is imbued with wide discretion. *See Douglas Oil Co.*, 441 U.S. at 223, 228; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959). The Second Circuit has explained that this discretion granted to a trial court deciding whether to make grand jury materials public is "one of the broadest and most sensitive exercises of careful judgment that a trial judge can make." *In re Craig*, 131 F.3d at 104. The court must carefully weigh the need for disclosure of the grand jury transcript, whether in full or in part, and the public interest in secrecy. In so doing, the court must consider the particular, relevant circumstances of the case. *See Douglas Oil Co.*, 441 U.S. at 223 ("[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."); *In re Craig*, 131 F.3d at 107 (explaining that factors weighing in favor of both secrecy and disclosure must be "evaluated in the context of the specific case by the court to which the petition has been properly brought"). A court that determines that the party seeking disclosure has met its burden of showing that the need for disclosure is greater than the public interest in secrecy may also choose to limit the amount of the

grand jury transcript disclosed and/or include protective limitations on the use of the material unsealed. *Douglas Oil Co.*, 441 U.S. at 222-23; *see also Ruther*, 879 F. Supp. at 251 ("[I]f disclosure is warranted the material can be subject to an appropriate protective order.").[7]

## IV. ANALYSIS

For the reasons set forth below, after carefully balancing the above-referenced factors in the context of the Court's *ex parte* review of the Grand Jury transcript itself, the Court concludes that release of the Grand Jury materials is warranted in this particular case.

### A. Whether Release of the Grand Jury Materials is Necessary to Avoid an Injustice

Plaintiffs commenced this action alleging, *inter alia*, Section 1983 claims of malicious prosecution against both the County defendants and the Sentosa defendants, and false arrest against the Sentosa defendants. Plaintiffs allege that "the grand jury was not properly charged on the law, that exculpatory evidence was withheld, that irrelevant and unduly prejudicial evidence was admitted, and that certain witnesses, including defendant Philipson, gave false inculpatory evidence against the plaintiffs." (Pls.' Mot. to Unseal at 2.) Accordingly, plaintiffs claim that they need access to the grand jury minutes to substantiate their malicious prosecution and false arrest claims. As discussed in detail below, after carefully considering the arguments of the parties and reviewing the Grand Jury transcript, the Court finds that plaintiffs have made a compelling case that

---

[7] In making its determination, a court may conduct *in camera* review of the grand jury materials for which disclosure is requested. *Ruther*, 879 F. Supp. at 251.

the Grand Jury minutes are necessary to the prosecution of this civil case.

### 1.  Applicable Law

To prevail on a Section 1983 malicious prosecution claim, a plaintiff must show "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment," and must establish the elements of a malicious prosecution claim under state law. *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal citation and quotation marks omitted). The elements of a malicious prosecution claim under New York law are as follows: "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

Courts in this circuit have recognized that the *Douglas Oil* test can be satisfied where a civil rights claim for malicious prosecution would be hindered by denial of access to grand jury materials. *See Frederick*, 2012 WL 4947806, at *7 (explaining that "the interests of justice may be thwarted by refusal to unseal grand jury minutes" in malicious prosecution cases). However, unsealing is not automatically warranted simply because the person requesting disclosure is a malicious prosecution plaintiff. *See id.* at *8 ("'Authorizing a fishing expedition based solely on conclusory allegations of misconduct before the grand jury would result in every plaintiff who claimed malicious prosecution being given access to the minutes of the grand jury that voted on

the underlying indictment . . . [which] would defeat the purpose behind the particularized need test . . . .'" (quoting *Alvarado v. City of New York*, 04 Civ. 2558, 2006 WL 2252511, at *2 (E.D.N.Y. Aug. 5, 2006))). "Indeed, '[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct.'" *Wilson*, 2007 WL 4565138, at *2 (quoting *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990)); *see also Frederick*, 2012 WL 4947806, at *10 (explaining that first prong of *Douglas Oil* test can be met when "plaintiffs adduce facts that strongly suggest misconduct at the grand jury"). Essentially, the party requesting disclosure of grand jury materials, either in whole or in part, must make a "showing of likely success in defeating the presumption of probable cause." *Frederick*, 2012 WL 4947806, at *9.[8] A party's own version of the events alone will not suffice; the party requesting disclosure must present more than its own version of events to potentially rebut the presumption of probable cause created by a grand jury indictment. *Id.* at *10 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)).

Courts in this circuit have also found that the *Douglas Oil* test can be satisfied where a civil rights claim for false arrest would be hindered by denial of access to grand jury materials. *See Palmer v. Estate of Stuart*, 02 Civ 4076, 2004 WL 2429806, at *3 (S.D.N.Y. Nov. 1, 2004) ("With respect to a 'possible injustice' Palmer has made a compelling case that the grand jury

---

[8] In *Frederick v. New York City*, Judge Oetken of the Southern District of New York explained the importance of requiring this particularized showing in malicious prosecution cases: Granting all motions to unseal grand jury materials in malicious prosecution cases "would trammel grand jury secrecy, but denying all of them would undoubtedly create a potential for injustice in some meritorious § 1983 suits." 2012 WL 4947806, at *9.

testimony may be necessary to the prosecution of this [false arrest and false imprisonment civil] case."). To prevail on a Section 1983 false arrest claim, a plaintiff must prove the four elements of a false imprisonment claim under New York law: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest to the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975). Grand jury proceedings may be relevant to a determination of whether there was intent to confine and/or whether there was probable cause for the arrest. *See Palmer*, 2004 WL 2429806, at *3 ("Palmer's claim centers on whether the police had probable cause to arrest him and whether they gave false testimony at the preliminary hearing that resulted in his being held in jail", and Palmer needed access to grand jury testimony from the later proceeding that did not result in an indictment to analyze "the dramatic change in the probable cause findings" to substantiate his claim.).

Before a court evaluating an unsealing request determines that releasing grand jury minutes is necessary to avoid a possible injustice, it must determine that "no alternative means of illuminating the grand jury proceeding exist." *Frederick*, 2012 WL 4947806, at *14; *see also Lucas v. Turner*, 725 F.2d 1095, 1102 (7th Cir. 1984) (explaining that party requesting disclosure must demonstrate that grand jury materials contain information "necessary, rather than simply beneficial to their [civil] action and that the information contained therein could not have been obtained through normal discovery channels"). The Supreme Court has noted the "useful purpose" that "[m]odern instruments of discovery serve", and has accordingly required proof that without the grand jury materials a "defense would be greatly prejudiced or that without

reference to [the grand jury materials] an injustice would be done." *Procter & Gamble Co.*, 356 U.S. at 682.

### 2. Analysis

Plaintiffs claim that their Grand Jury Indictment was procured through, *inter alia*, false testimony, improper charging on the law, and the withholding of exculpatory evidence. Though conclusory allegations of misconduct or a generalized desire for grand jury materials do not warrant disclosure, this is not such a case. Plaintiffs have pointed to the proceedings in state court following the Grand Jury's issuance of the Indictment – the Second Department's issuance of a writ of prohibition and the Supreme Court's subsequent dismissal of the Indictment. These state court proceedings established that plaintiffs were previously being threatened with prosecution for crimes for which they could not constitutionally be tried. The fact that the Grand Jury issued an Indictment for crimes for which plaintiffs could not constitutionally be tried provides a compelling basis for disclosure of the Grand Jury materials in this civil rights case. After all, grand jurors concluded that plaintiffs *could* be constitutionally indicted for the crimes charged, unlike the Second Department, which later issued a writ of prohibition to prevent prosecution pursuant to the Indictment. Plaintiffs are entitled to see in this case what evidence and legal instructions led to those impermissible charges. These circumstances alone are sufficient to support the conclusion that there is a significant risk of injustice if plaintiffs are not permitted to examine the Grand Jury minutes. *See, e.g., Palmer*, 2004 WL 2429806, at *3 (when probable cause to believe plaintiff committed a felony was found based on testimony at a preliminary hearing but not at the grand jury, plaintiff needed to examine grand jury testimony to fully litigate his civil claims).

However, plaintiffs' showing of particularized need is not solely based upon the writ of prohibition. Plaintiffs have also made specific allegations of misconduct in connection with the Grand Jury proceeding. For example, plaintiffs assert that the Grand Jury was falsely informed that one or more of the nurses had resigned during a shift, and that the prosecution failed to tell the Grand Jury that the Education Department had already determined that the nurse plaintiffs had not violated the Education Law (even though the Education Law was the basis for the duty to the patients contained in the Indictment).

Although prosecutors have absolute immunity for any alleged misconduct in grand jury proceedings, evidence of such misconduct in this case would be critical to undermine the presumption of probable cause that would otherwise attach to the Grand Jury Indictment in response to claims of false arrest or malicious prosecution that are not based upon the Grand Jury proceeding itself. For example, the Grand Jury minutes are extremely important for plaintiffs' false arrest claim against the Sentosa defendants. That claim centers on whether the Sentosa defendants intended to confine plaintiffs and whether plaintiffs' arrest was otherwise privileged. In regards to the Sentosa defendants' intent to confine, plaintiffs have alleged that the Sentosa defendants entered into an agreement with the County defendants to procure plaintiffs' Indictment through false testimony and the withholding of exculpatory evidence. (Am. Compl. ¶ 113.) The events of the Grand Jury proceedings are, therefore, critical to plaintiffs' false arrest claim, and because plaintiffs were not present during the Grand Jury proceedings, "without the grand jury minutes, [plaintiffs are] in no position to make specific arguments on this score." *Palmer*, 2004 WL 2429806, at *3. Thus, the Court concludes that denying plaintiffs

access to evidence of what happened at the Grand Jury would create a strong potential for injustice in their pursuit of the civil rights claims in this case.

Having found that denying plaintiffs access to the Grand Jury minutes would create a potential for injustice, the Court must consider whether there are sufficient alternative means of shedding light on the proceedings. *See Frederick*, 2012 WL 4947806, at *14. Defendants urge the following: (1) "release of the minutes to the plaintiffs is unnecessary to determine if the grand jury was properly charged on the law, if exculpatory evidence was withheld, or if irrelevant and unduly prejudicial evidence was admitted during the proceeding," as these issues are matters of law and the Court can make such determinations during its *in camera* inspection without also releasing the materials to plaintiffs, (Defs.' Opp'n to Mot. to Unseal at 2), and (2) release to determine whether witnesses gave false testimony is unnecessary because other means of obtaining that information exist – namely, through deposition testimony, (*id.* at 2-3.)

On the first issue, the Court has already conducted an *in camera* review of the grand jury materials and, as discussed *infra*, concludes that the materials should be unsealed in their entirety. Moreover, the Court disagrees with defendants' contention that the issues raised in connection with the Grand Jury proceeding are simply matters of law that can be decided by the Court without input from the parties. For example, as discussed at oral argument, whether false evidence was presented to the Grand Jury is contingent upon what other evidence plaintiffs develop to challenge what was presented to the Grand Jury. Thus, the Court is in no position to make those assessments in a vacuum without reference to all other evidence that can be presented by the parties.

16

As to defendants' second contention – that plaintiffs can determine whether false testimony or erroneous legal instructions were given at the Grand Jury through deposition testimony – the Court disagrees. First, absent relief via an order from the Court, the prosecutor would not be able to discuss what transpired in the Grand Jury proceeding at his deposition. Second, without access to the Grand Jury materials, plaintiffs cannot discern the identity of everyone who testified before the Grand Jury, (Pl.'s Reply in Supp. of Mot. to Unseal at 2), and will therefore be significantly hampered in their ability to determine which fact witnesses to focus on for purposes of discovery, including depositions. Third, due to the significant passage of time between the Grand Jury proceedings and when depositions in this litigation would take place, there is a significant risk that witnesses will not recall all the details of the relevant events or their Grand Jury testimony. *See Palmer*, 2004 WL 2429806, at *3 ("It is highly unlikely that the surviving officers in 2004 could recall precisely what they said before the grand jury in 1999, at the time the matter was freshest in their minds."); *Dale v. Bartels*, 532 F. Supp. 973, 977 (S.D.N.Y. 1981) (finding it unlikely that witness would be able to give the entire substance of his grand jury testimony years later at a deposition).[9] Thus, without the minutes, plaintiffs could not refresh a witness's recollection during a deposition or impeach a witness with inconsistent testimony. For all of these reasons, without the actual Grand Jury materials, plaintiffs will be prejudiced in their ability to, among other things, decide which witnesses to question, discern what questions to ask at depositions, and determine the issues for which witnesses might need to have their recollection refreshed.

Finally, regardless of what transpires in discovery, plaintiffs will need to access the Grand Jury minutes to rebut the probable cause presumption that would otherwise attach to the Grand Jury Indictment. Thus, there is a particular and compelling need for disclosure at *this* juncture, as opposed to re-assessing plaintiffs' disclosure request at the conclusion of discovery.

In sum, the Court concludes that the first of the *Douglas Oil* factors weighs in favor of granting plaintiffs' unsealing request.

### A. Whether the Need for Disclosure is Greater than the Need for Continued Secrecy

The second prong of the *Douglas Oil* test requires this Court to balance plaintiffs' need for disclosure with the need for continued secrecy. As discussed *supra*, the Supreme Court has enumerated five reasons for grand jury secrecy to guide courts in their evaluation of requests to unseal, *see Procter & Gamble Co.*, 356 U.S. at 681 n.6, and the Court must consider those reasons in light of the specific context of this case, *see Douglas Oil Co.*, 441 U.S. at 223.

As a preliminary matter, the Court notes that the Supreme Court's fifth reason for grand jury secrecy – to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation – is not applicable here. Plaintiffs were originally indicted by the

---

[9] The Court notes that any passage of time in this case has not been the result of "inactivity" by or any "lethargic attitude" of plaintiffs' counsel. *Lucas*, 725 F.2d at 1102-03 (acknowledging that many delays negatively impacted plaintiffs' ability to obtain comparable information during discovery, but concluding that, because much of the delay was the result of "the plaintiffs' attorneys own inactivity" and "the plaintiffs' previous attorneys' lethargic attitude toward the present litigation", delay in and of itself did not merit disclosure of grand jury minutes).

Grand Jury and, even though their Indictment was later dismissed, they were publically named as defendants before such dismissal.

The Court further notes that "the passage of time erodes many of the justifications for continued secrecy." *In re Craig*, 131 F.3d at 107. This is especially true when, as here, the materials for which disclosure is requested are from grand jury proceedings that have been completed – for in such situations, the secrecy factors that relate to preventing the escape of those whose indictment may be contemplated, protecting the grand jury's deliberations, and preventing subordination of perjury or tampering with witnesses who may testify before the grand jury are simply not applicable. *See, e.g.*, *In re Application of Exec. Secs. Corp.*, 702 F.2d 406, 410 (2d Cir. 1983) (finding no risk that members of grand jury will be influenced by release of grand jury minutes because grand jury was no longer in session); *Palmer*, 2004 WL 2429806, at *5 (explaining that because the grand jury proceeding is over, disclosure of testimony will not facilitate any escape or cause any witness tampering). However, the Court is mindful that "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co.*, 441 U.S. at 222; *see also Sobotka*, 623 F.2d at 767 ("We conclude that while the necessity here be less compelling in view of the termination of the grand jury, nonetheless some necessity need be shown by the party seeking disclosure."). Thus, the Court must consider what, if any, self-censorship effects the disclosure of the Grand Jury materials in this case will have on future grand juries.

The Court also concludes that it is highly unlikely that any prospective grand jury witness who learns of this Court's decision to unseal plaintiffs' Grand Jury minutes will be less inclined to give full and frank testimony at a future grand jury proceeding. As a threshold matter, several courts have noted that the release of grand jury testimony is no longer a rarity, and grand jury witnesses are likely to learn that before testifying. For example, in *Frederick v. New York City*, the Southern District of New York considered a request for the release of state grand jury materials for use in a related civil case predicated on a Section 1983 claim. 2012 WL 4947806, at *1. Evaluating the self-censorship concern related to the release of such traditionally kept secret materials, the court stated the following:

> Grand jury witnesses should *expect* that their testimony may well be used against a third party at trial – whether the criminal suspect under investigation or someone else entirely. If that happens, their grand jury testimony may also come into play; indeed, prosecutors regularly turn over portions of grand jury testimony to criminal defendants pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500. For that reason, it is hard to imagine that grand jury witnesses would be less likely to provide testimony, or more likely to distort it, simply because their words might be used against another person. This is even more obviously the case when we turn to the decidedly unlikely specter of self-censorship resulting from fear that grand jury statements may ultimately be used against other people in a civil suit arising years later from misconduct in the original criminal case.

*Id.* at *6; *see also In re Application of Exec. Secs. Corp.*, 702 F.2d at 409 n.4 ("[T]he

18

1970 amendment of the Jencks Act has made the release of grand jury testimony a frequent occurrence" and, as such, "[e]very sophisticated grand jury witness knows that, if he becomes a witness at trial, his grand jury testimony will most likely be revealed to the public."); *Palmer*, 2004 WL 2429806, at *5 ("After all, whenever a witness testifies for the prosecution at a criminal trial, the grand jury testimony of that witness relating to the subject matter of his or her trial testimony is automatically made available to the defendant." (citing CPL § 240.45(1)(a))). Although the increased release of grand jury testimony in recent years has lessened the strength of the self-censorship interest as it relates to future grand juries, it is still an important consideration that must be carefully weighed by the Court. However, concern about the general chilling effect that disclosure could have on future grand jury witnesses is significantly diminished in this case because this case is not the ordinary case – namely, it involves the extraordinary situation where a state court issued a writ of prohibition precluding prosecution of the Indictment because the criminal prosecution of those charges constituted "an impressible infringement upon the constitutional rights of these nurses and their attorney." *Vinluan*, 60 A.D.3d at 240. In short, this self-censorship concern is overwhelmingly outweighed by the other compelling factors favoring disclosure in this case.

Moreover, in recognition of the strong policy of comity between federal and state sovereignties – a policy that, as discussed *supra*, is very important in the grand jury disclosure context – the Court has also considered state privileges and policy considerations. However, in this particular case, there is no concern that release would violate the comity between federal and state sovereignties because of the litigation regarding these materials that has already taken place in state court. In particular, before turning over the Grand Jury materials to this Court for *in camera* review, the Supreme Court, Suffolk County issued a written opinion detailing the state privileges and policies that it considered in arriving at its recommendation that the materials be released. The court first recognized the traditional policy of secrecy of grand jury proceedings, listed the policy reasons for secrecy as propounded by the New York Court of Appeals, acknowledged the particularized need standard for disclosure, and recognized the discretion that a court, "balanc[ing] the competing interests involved, the public interest in disclosure against that in secrecy," has to disclose grand jury materials. *In re Druker*, No. 11-12243, slip op. at 4. The court then addressed many of the same policy considerations already discussed in this opinion – namely, the fact that many of the reasons for secrecy are inapplicable because the Grand Jury has completed its proceedings. *Id.* The court also similarly concluded that disclosure in this case would not have a chilling effect on the ability of future grand juries to obtain witnesses. *Id.* Finally, the court addressed one additional policy consideration – that "the public's interest in accurate information about its public officials outweighs the assurance of secrecy for witnesses in future grand jury proceedings." *Id.* (citing *Jones v. State of New York*, 79 A.D.2d 273, 436 N.Y.S.2d 489 (4th Dep't 1981)). Thus, though the Court recognizes that it is not bound by state law regarding disclosure of grand jury materials, the fact that it made a similar determination to the state court that first considered the question means that its decision considers both federal and state privileges and policy considerations.

The Court, therefore, concludes that the second of the *Douglas Oil* factors also

weighs in favor of granting plaintiffs' unsealing request.

### B. Whether the Request was Structured to Cover Only Material Needed

"The substantial discretion afforded to district courts in deciding motions to unseal grand jury minutes extends to control over the extent of any disclosure ultimately authorized." *Frederick*, 2012 WL 4947806, at *14. However, district courts are required to ensure that disclosure requests are "structured to cover only material so needed." *Douglas Oil Co.*, 441 U.S. at 222. Accordingly, the Second Circuit has stated that if a court determines that grand jury materials should be disclosed, its "disclosure order must be structured to cover only the material required in the interests of justice." *Sobotka*, 623 F.2d at 768.[10]

Plaintiffs have requested that all of the Grand Jury materials be disclosed – the entirety of the minutes, all charges on the law, any and all dialogue between grand jurors and the prosecutor, and all evidence presented to the Grand Jury by the prosecution. (*See* Pl.'s Mot. to Unseal at 1-2.) The Court has determined that although this request may on first glance seem broad, it is in fact structured to cover the material required in this case in the interest of justice.

First, this is not a case in which misconduct is alleged as to a particular person's testimony or as to a particular issue. The misconduct alleged relates to the entirety of the Grand Jury proceedings,

including both factual and legal issues. Thus, in this particular case, it is impossible to parse out portions of the Grand Jury materials for disclosure purposes.

Second, the Court has conducted an *in camera* review of the Grand Jury materials for which disclosure is sought. *In camera* review of grand jury materials "allows an even more refined assessment of the delicate balance between justice and secrecy and thus a more accurately calibrated determination of whether the plaintiff states a 'particularized need' under *Douglas Oil*." *Frederick*, 2012 WL 4947806, at *14. Having reviewed the minutes, keeping in mind that strong policy favors the secrecy of grand jury proceedings, the Court concludes that plaintiffs have a particularized and compelling need for all of the Grand Jury materials, and that the materials should, therefore, be released in their entirety.

Third, the Supreme Court, Suffolk County considered whether the materials requested should be disclosed and recommended that they be released in their entirety. The court considered the issue in the context of state privileges and policy concerns and concluded that all, rather than a limited subset, of the Grand Jury materials should be released. *In re Druker*, No. 11-12243, slip op. at 4. ("In examining the policy considerations as they relate to the case at bar, this Court finds that there are ample reasons to release the grand jury minutes, testimony and exhibits."); *id.* ("In light of the findings herein, and the slight need for keeping the grand jury proceedings secret, the information should be released." (citations omitted)). Thus, this Court's similar determination that all of the Grand Jury materials should be released is in recognition of state privileges and, therefore, in adherence with the strong policy of comity between state and federal

---

[10] The Court notes that though Rule 6(e) applies to both documents and testimony before the grand jury, "[a] request for grand jury documents may evoke different, and less exacting, considerations than a request for transcripts of grand jury testimony." *SEC v. Everest Mgmt. Corp.*, No. 71 Civ. 4932 (D.N.E.), 87 F.R.D. 100, 105 (S.D.N.Y. 1980); *see also In re Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1089 (7th Cir. 1982).

sovereignties. *See Frederick*, 2012 WL 4947806, at *11.

Moreover, the Second Department – in considering whether to issue a writ of prohibition to prevent the district attorney from prosecuting plaintiffs under the Indictment issued by the Grand Jury – held that "[w]here, as here, the petitioners are threatened with prosecution for crimes for which they cannot constitutionally be tried, the potential harm to them is so great and the ordinary appellate process so inadequate to redress that harm that prohibition should lie." *Vinluan*, 60 A.D.3d at 251 (internal citation and quotations omitted). This conclusion further supports a finding of "good cause" for disclosure of the Grand Jury materials in their entirety. *See Proctor & Gamble Co.*, 356 U.S. at 684 ("It is only when the criminal procedure is subverted that 'good cause' [within the meaning of Rule 34 of the Federal Rule of Civil Procedure] for wholesale discovery and production of a grand jury transcript would be warranted."); *United States v. Procter & Gamble Co.*, 180 F. Supp. 195, 207 (D.N.J. 1959) (interpreting Supreme Court's holding in *Procter & Gamble Co.*, 356 U.S. 677, and stating that "if the Government's use of the grand jury has been completely wrong . . ., the 'entire Grand Jury transcript' is discoverable to the defendants without the showing of other cause; . . . but if there is a subversion by the partial unlawful use of the Grand Jury . . ., then that portion of the transcript is to be discovered wholesale, without the showing of other particularized cause").

For all of these reasons, the Court concludes that the third *Douglas Oil* factor also weighs in favor of granting plaintiffs' unsealing request.

\*        \*        \*

In sum, the Court, having considered all three *Douglas Oil* factors in the context of the Court's review of the Grand Jury transcript, as well as the state court's written recommendation that the Grand Jury materials be released, concludes in its discretion that the Grand Jury materials for which plaintiffs seek disclosure should be released to the parties in their entirety. However, before the materials are disclosed, the Court will place restrictions on their dissemination at this juncture to ensure that they are not disclosed to the public, even though they are being made available to the parties for purposes of discovery in this litigation.

V. CONCLUSION

For the foregoing reasons, plaintiffs' motion to order disclosure of the Grand Jury materials is granted. The Court will schedule a telephone conference to discuss the scope of the restrictions on dissemination of the Grand Jury materials by the parties.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:   January 25, 2013
           Central Islip, NY

Plaintiffs are represented by James Druker of Kase & Druker, Esqs., 1325 Franklin Avenue, Suite 225, Garden City, NY 11530. Plaintiff Vinluan is also represented by Oscar Michelen of Cuomo LLC, 200 Old Country Road, Suite 2 South, Mineola, NY 11501. The County defendants are represented by Brian C. Mitchell, Suffolk County Department of Law, County Attorney, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788. The

Sentosa defendants are represented by Sarah C. Lichtenstein of Abrams, Fensterman, Fensterman, Flowers, Greenberg & Eisman, 111 Marcus Avenue, Suite 107, Lake Success, NY 11042.