# ABRAMS **AF** FENSTERMAN

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP

Attorneys at Law
www.abramslaw.com

3 Dakota Drive - Suite 300
Lake Success, New York 11042
Phone: 516-328-2300
Fax: 516-328-6638
Fax Not For Legal Services

FIRM OFFICES

Brooklyn
New York
Rochester

**Howard Fensterman, Esq.**
*Managing Partner*
hfensterman@abramslaw.com

November 4, 2019

Honorable Frederic Block
United States District Court
For the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Anilao v. Spota, et al.*
Docket No. 10CV(fb) (ake)

Dear Justice Block:

I write this letter in response to the specious communication sent to the Court by the law firm Kase and Druker. In addition, I am compelled to briefly respond to the letter of Mr. Lipsius. (DE 166) In the above-referenced matter, I acted in my capacity as personal counsel to Mr. Benjamin Landa as expressly indicated in my October 23, 2019 correspondence to this Court. (DE 161 and attached herein)

Mr. Landa and Mr. Philipson have been engaged in a partnership battle for several months. This dispute is very contentious. As this Court is aware, Mr. Philipson is an individually named defendant in the above-referenced action. Avalon Nursing Home, in which both Mr. Landa and Mr. Philipson are partners, is one of the other defendants. While I cannot disclose what my client told me, suffice to say Mr. Landa's objection to the settlement was based upon the question as to which defendant was funding the settlement. Mr. Lipsius confirmed to my partner Amy Marion that he had not told Mr. Landa who would be paying the settlement sum when he received his authority to settle on behalf of Avalon. Amy Marion has reported that Mr. Landa for his part, was informed, as was already stated on the record in open court, that Mr. Philipson's name would be removed from the lawsuit. Based upon this understanding, Mr. Landa informed Ms. Marion that in exchange for removal of his name, Mr. Philipson was paying 50% of the settlement sum. Upon Mr. Landa learning that 100% of the settlement sum would be paid by Avalon, something he had not been told and which he did not agree to, this Court's intervention was sought, prompting my October 23rd correspondence. (DE 161)

Honorable Frederick Block
November 4, 2019
Page 2

_____

      The missive forwarded by Mr. Druker and Mr. Michelen states at the conclusion of the second paragraph that "Mr. Fensterman and Ms. Marion both well knew, their client, as a minority shareholder in Avalon, lacked standing to object to the settlement."(DE 166) In the first instance, Avalon is a Limited Liability Company and not a corporation. Hence, Mr. Landa was not a shareholder. He is denominated a member. More importantly, the Operating Agreement of the LLC provides that Mr. Landa was and is a "co-manager" of the entity along with Mr. Philipson. The agreement provides that the entity was to be co-managed by both individuals jointly and not independently. Accordingly, Mr. Landa had full standing to take a position that he did not want the settlement agreement executed. The fact that he had less of a percentage in the LLC was irrelevant to decision making on behalf of the company. I have attached the relevant pages of the Operating Agreement to reflect this fact.

      The third paragraph of counsels' correspondence alleges that my intervention on behalf of my client was unwarranted and was motivated by my personal desire "to use the Court" to collect legal fees. (DE 166) It is only then they allege that "Mr. Fensterman allowed Mr. Landa to withdraw his opposition to the settlement." (*Id*.). This defamatory statement, which defames me as well as Mr. Landa, is not true. Mr. Landa is a client who I work for, not the other way around. To state that I have the power or authority to "allow" Mr. Landa to settle a case is absurd and false. (*Id*.). He is an extremely sophisticated businessman who makes his own decisions, when he seeks my advice as his lawyer, I give it to him. He makes the ultimate decision. I do not have the power, authority, or means to "allow" him to do anything.

      Indeed, I have never spoken to Mr. Druker or Mr. Michelen about this settlement dispute and thus it is extremely troubling at a minimum, that they would publish this defamatory information to this Court, having no direct knowledge of any confidential and privileged communications that I may or may not have had with my client. Any information which they claim to be privy to, obviously came from another source. Furthermore, to unequivocally set the record straight, the suggestion that legal fees were involved in Mr. Landa's decision to settle the case is false. I was not present when the case settled. It was reported to me that Mr. Landa was in the courthouse when he fortuitously ran into a gentleman named Chesky Berkowitz who is a business associate of both Mr. Landa and Mr. Philipson. Mr. Berkowitz had previously participated in the attempted settlement of the Landa/Philipson dispute as a friend and business associate. Thus, he proceeded to mediate the settlement and dispute between Mr. Landa, who was in the courthouse and Mr. Philipson who was on the telephone. I did not participate in that process. Indeed, I was first informed of the settlement an hour after it was finalized.

      As it relates to my response to the letter of Mr. Lipsius, I will be very succinct. While he acknowledges Mr. Druker and Mr. Michelin have made a false representation to the court regarding their allegation that I held up a settlement because I wanted legal fees, he nonetheless states I was "holding" up the settlement because of a payment to be made to me. Once again, any written missives or statements I made

Honorable Frederick Block
November 4, 2019
Page 3

---

were at the direction of my client. This whole notion that I controlled Mr. Landa and could obstruct a settlement is patently absurd. I represented a client and advocated on his behalf. Mr. Landa did nothing inappropriate in questioning the issue of who was funding the settlement. I, as his attorney did nothing inappropriate. His only issue was the question of who was funding the settlement, not whether there was to be a settlement.

    I am sorry to disturb Your Honor with yet another correspondence, however, was appalled at the statements made by plaintiffs' attorneys in this case considering they had no contact with me or my client regarding the settlement or any of the circumstances surrounding the settlement. I am equally concerned that they would rely upon and convey accusations that obviously must have come from a source whose partiality, credibility and veracity is compromised. It is particularly peculiar that plaintiffs' attorneys would make material misrepresentations to the court, and especially so when the settlement was consummated.

Very truly yours,

Howard Fensterman